677 A.2d 73

**Karen E. DeBUSK**

v.

**JOHNS HOPKINS HOSPITAL.**

**No. 110 Sept. Term, 1995.**

Court of Appeals of Maryland.

June 3, 1996.

Harvey Greenberg, Towson, for Petitioner.

Heather H. Kraus (Perry E. Darby, Joseph M. English, IV, on brief), Baltimore, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

Under the Maryland Workers' Compensation Act, an employee accidentally injured on the job must file a claim for workers' compensation benefits within two years of the date of "the accidental personal injury" or any claim arising out of that injury is completely barred. In the case before us, petitioner contends that the statutory language "accidental personal injury" should be interpreted as the date the petitioner knew or should have known that she had a compensable injury. We disagree. The two-year workers' compensation statute of limitations on claims for accidental injuries on the job runs from the date of the actual accident causing the injury. Since petitioner filed her claim for benefits two years and one month after the date of her accidental injury, her claim is barred.

## I.

Karen DeBusk was a registered nurse at Johns Hopkins Hospital (hereinafter "the Hospital") in Baltimore City. On October 3, 1990, DeBusk was adjusting the bed of a patient when the bed tilted, and DeBusk, thinking the bed was collapsing, grabbed the bed and held it up. She released her hold on the bed after only a few moments when a co-worker coming to her aid told her the bed was not collapsing, but at the time of the incident she felt a minor strain in her neck and right shoulder. She informed her supervisor of the incident but continued to work through the end of her shift.[1]

During the next two months, DeBusk continued to work all of her scheduled shifts, missing no days but experiencing

---

1. As the case *sub judice* was concluded in the trial court by a summary judgment in favor of the Hospital, in our review of that judgment we

regular minor discomfort in her neck and shoulder. After two months, on December 6, 1990, DeBusk went to the Johns Hopkins Hospital Workers' Compensation Clinic to have her shoulder and neck checked by a doctor. The examination and x-rays showed nothing remarkable and DeBusk continued her regular work duties without interruption. A few months later, because the pain and discomfort continued and intensified, DeBusk began visiting a chiropractor, who treated her for approximately eighteen months. On July 24, 1992, tests on DeBusk's neck and arm indicated some disc herniation and evidence of a spur on the spine.

She filed a workers' compensation claim with the Workers' Compensation Commission (hereinafter "the Commission") on November 10, 1992, citing an injured neck and back and setting the accident date as October 3, 1990. On the employee claim form for the Commission, DeBusk described the accident causing her injury thus:

"*Description of Accident or How Occupational Disease Occurred*

While lowering electric bed, bed frame became unbalanced and tilted and I heard a loud noise startling both me and patient in the bed. To prevent patient from falling out I attempted to hold the bed level while calling for assistance."

The Commission ruled that DeBusk's claim was barred by the two-year statute of limitations on accidental injury workers' compensation claims, found in Maryland Code (1957, 1991 Repl.Vol.), § 9–709 of the Labor & Employment Article.[2]

DeBusk appealed to the Circuit Court for Baltimore City, arguing that the limitations period did not begin to run on the

---

must consider the facts in the light most favorable to the petitioner DeBusk, the party against whom summary judgment was granted.

**2.** Section 9–709 provides in relevant part:

"**§ 9–709. Claim application—Accidental personal injury.**
(a) *Filing claim—In general.*—Except as provided in subsection (c) of this section, if a covered employee suffers an accidental personal injury, the covered employee, within 60 days after the date of the accidental personal injury, shall file with the Commission:

date of the accident itself, but rather on the date she knew or should have known that she had a compensable injury. She set that date as December 6, 1990, the date she first saw a doctor for the pain in her neck. The circuit court rejected her interpretation of the statutory language, however, and granted summary judgment for the Hospital.

The Court of Special Appeals affirmed the summary judgment ruling of the trial court in *DeBusk v. Johns Hopkins Hospital*, 105 Md.App. 96, 658 A.2d 1147 (1995), holding first that the claim was indeed barred by the two-year statute of limitations found in § 9–709, and further that the statute was constitutional under both the United States Constitution and the Maryland Declaration of Rights. DeBusk sought certiorari review of the intermediate appellate court's decision on both questions, which we granted.

## II.

Petitioner Debusk asks us to read the language of § 9–709 to mean that the limitations period begins to run from the

---

(1) a claim application form; and

(2) if the covered employee was attended by a physician chosen by the covered employee, the report of the physician.

(b) *Failure to file claim.*—(1) Unless excused by the Commission under paragraph (2) of this subsection, failure to file a claim in accordance with subsection (a) of this section bars a claim under this title.

(2) The Commission may excuse a failure to file a claim in accordance with subsection (a) of this section if the Commission finds:
  (i) that the employer or its insurer has not been prejudiced by the failure to file the claim; or
  (ii) another sufficient reason.

*(3) Notwithstanding paragraphs (1) and (2) of this subsection, if a covered employee fails to file a claim within two years after the date of the accidental personal injury, the claim is completely barred.*

(c) *Filing claim—Ionizing radiation.*—If a covered employee is disabled due to an accidental personal injury from ionizing radiation, the covered employee shall file a claim with the Commission within two years after:
  (1) the date of disablement; or
  (2) the date when the covered employee first knew that the disablement was due to ionizing radiation." (Emphasis added.)

date that a worker becomes aware that he or she has a compensable injury. She contends that our interpretation of § 9–709's pre–1957 predecessor statute of limitations in *Griffin v. Rustless Iron & Steel Co.,* 187 Md. 524, 51 A.2d 280 (1947) is still applicable. In *Griffin* we held that the limitations period began to run "from the time when disability becomes, or should become, reasonably apparent." *Id.* at 540, 51 A.2d at 288. As we discuss *infra,* a number of cases followed *Griffin* in the next decade, also interpreting the pre–1957 statute, which picked up the *Griffin* line of reasoning and further clarified that an injury which was latent or trivial would not trigger the limitations period.

In its opinion rejecting DeBusk's challenge, the Court of Special Appeals relied on the change in statutory language which occurred in 1957, as well as the intermediate appellate court's reasoning in *Dintaman v. Bd. of County Comm'rs of Prince George's County,* 17 Md.App. 345, 303 A.2d 442 (1973). The *Dintaman* court held that the Legislature in 1957 clearly intended the date of the accident, regardless of the trivial or latent nature of the injury at that time, to be the date the two-year limitations period begins. The intermediate appellate court in the instant case agreed, further holding that amendments to the statute *since* 1957 have not altered the original intention of the 1957 revision.

We have taken into account the history of the statute of limitations in workers' compensation, the principles upon which the workers' compensation system is grounded, the clear language of the statute, and case law, and we cannot accept DeBusk's interpretation.

a.

■ The Workers' Compensation Act, Md.Code (1957, 1991 Repl.Vol., 1995 Cum.Supp.), § 9–101 *et seq.* of the Labor & Employment Article (hereinafter "the Act"), was designed to provide employees with compensation for loss of earning capacity, regardless of fault, resulting from accidental injury, disease, or death occurring in the course of employment. *Queen v. Agger,* 287 Md. 342, 343, 412 A.2d 733, 733–34 (1980);

*Howard County Ass'n for Retarded Citizens v. Walls,* 288 Md. 526, 531, 418 A.2d 1210, 1214 (1980); *Bethlehem–Sparrows Point Shipyard v. Damasiewicz,* 187 Md. 474, 480, 50 A.2d 799, 802 (1947). Compensation awarded on this fault-free basis under the statutory plan substitutes for an employee's common law right to bring a fault-based tort suit against an employer for damages resulting from the employee's injury or disablement on the job. *See* § 9–509 of the Act (compensation provided to a covered employee under the Act replaces any right of action against any person, including the employer); *Brady v. Parsons Co.,* 327 Md. 275, 279, 609 A.2d 297, 298–99 (1992); *Gray v. State Roads Comm'n,* 253 Md. 421, 427–28, 252 A.2d 810, 812 (1969); *Unsatisfied Claim Bd. v. Salvo,* 231 Md. 262, 264, 189 A.2d 638, 639 (1963); *Baltimore Transit Co. v. State,* 183 Md. 674, 677, 39 A.2d 858, 859 (1944).

Gone are the days when an injured employee had to bring an uncertain and potentially expensive lawsuit against his employer, face numerous common law defenses which operated in favor of the employer, and often lose the suit in the end. Employees who follow the procedural rules of the Act and can prove they were injured while working can almost certainly recover compensation to prevent undue hardships caused by loss of wages and medical expenses. Employers who purchase workers' compensation insurance and otherwise comply with the law of workers' compensation can likewise count on avoiding a negligence lawsuit. Courts and commentators over the decades have noted how the Act strikes a important balance between the need to provide some form of financial benefits to injured or sick employees and the need, of both employers *and* employees, to avoid expensive and unpredictable litigation over accidents in the workplace. *See* Richard P. Gilbert & Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* §§ 1.0–1.2 (2d ed. 1993 & Supp. 1996).

Predictability and administrative ease, in the workers' compensation statutory plan as in all things, come at the price of *some* flexibility in unique or unusual circumstances. Objective standards and bright-line rules such as statutes of limitations

are the very keys to predictability, in the sense that everyone is treated in the same manner and everyone knows or can discover the rules in advance of their application. By their very nature, though, such rules and standards cannot make exceptions for every scenario which might arise. First, no lawmaker could construct a statute which foresaw each individual application of the statute and exception which might present itself. In addition, a statute which attempted to address not only the rule but all its possible exceptions would likely lose its valuable characteristic of predictability, because it would be that much more subject to manipulation in a courtroom than a statute which merely stated the rule and any major exceptions. Moreover, bright-line rules by definition cannot depend upon a factfinder's case-by-case assessment of the subjective knowledge of a person.

A statute of limitations which is triggered by an externally verifiable date is a classic example of an objective, bright-line rule which fosters predictable outcomes in otherwise unpredictable situations. During the summary judgment hearing in circuit court, DeBusk argued that the case-by-case discovery rule for tort actions [3] which we enunciated in *Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677, 680 (1981), should also apply to workers' compensation claims:

> "Now it seems to me totally irrational to have in civil actions one standard—that is, the discovery rule applies, and in a workers' compensation claim, which is supposed to be liberally construed, supposed to be passed for employees, a strict application where a claimant must, whether he knows or doesn't know he has a compensable claim, he must file a claim within two years from the date of accident, whether you know you've got a problem or don't have a problem. . . .
> In looking at the statute, I suggest, it doesn't make any sense in terms of what the objective of the Workers' Compensation Act is."

---

**3.** That is, that a cause of action in a tort case accrues when the claimant in fact knew or reasonably should have known about the wrong. *Poffenberger,* 290 Md. at 636, 431 A.2d at 680.

We disagree with DeBusk that an objective, clearly defined statute of limitations for workers' compensation claims is "totally irrational"; to the contrary, predictability such as provided by a strict statute of limitations is the cornerstone of the workers' compensation statutory scheme.

■ Section 9–709 of the Labor & Employment Article (see footnote 2) is just such a statute. An employee has two years "from the date of the accidental personal injury" to bring a claim; any claim under the Act is "completely barred" if the employee fails to bring a claim within that time period.[4] Our interpretation of "the date of accidental personal injury" is the date of the *accident* causing the personal injury. Such an interpretation is consonant not only with the plain meaning of the words, but also with the principle of predictability underlying the entire statutory scheme of workers' compensation. The date of an accident can in general be externally verified and known to all without a fact-finding process. On the other hand, the date an employee became aware, or should have become aware, that he or she had a compensable injury can truly be known only to the employee. If the defendant employer or insurance company challenges the employee's version of when awareness of a compensable injury began, the date must be determined through some significant fact-finding process involving presentation of evidence to an official fact-finder and an unpredictable outcome. If we read § 9–709 as the petitioner asks, merely the process of determining when the limitations period began could be as or more cumbersome and time-consuming than the actual resolution of the claim. We will not strain the meaning of the plain words in order to reach an outcome the Legislature could not have intended.

b.

The legislative history of the statute confirms our interpretation. The General Assembly stressed the value of a bright-

---

4. The one legislatively-determined exception to the complete bar, found in subsection (c) of § 9–709, is when the injury is caused by ionizing radiation. We discuss the exception in part IIc.

line statute of limitations in workers' compensation accidental injury cases in 1957, when it revised the existing statute to provide that the limitations period ran from the date of the *accident* rather than the date of the *disability*.

Section 38 of Article 101 of the Md.Code (1951) originally provided that a worker who failed to file a claim for compensation within a year "after the beginning of his disability" was completely barred from making any workers' compensation claim. The term "beginning of his disability" proved to be a source of repetitive litigation; this Court alone considered numerous cases concerning pre–1957 workers' compensation claims in which we attempted to define when a claimant knew or should have known he or she had a disability. Often we made a distinction as to the date the limitations period began to run based on whether the injury was "latent or trivial," and generally we allowed such claims as the petitioner makes before us in the instant case, reasoning that the compensable "disability" did not necessarily occur when the actual accident occurred. *E.g., Griffin v. Rustless Iron & Steel Co.,* 187 Md. 524, 51 A.2d 280 (1947) (the period of limitations runs from the time that the disability becomes, or should become, apparent, excluding "trivial" disabilities); *Baltimore Steel Co. v. Burch,* 187 Md. 209, 49 A.2d 542 (1946) (where injury at time of accident was slight and did not cause employee to miss work, period of limitations ran from the date the injury was compensable and not from the date of the accident); *Cumberland Motor Sales v. Hilliker,* 210 Md. 70, 122 A.2d 329 (1956) (statute of limitations begins to run against worker as soon as it becomes or should become reasonably apparent to him that he has a compensable disability of any class arising from an accident); *Eastern Shore Pub. Serv. Co. v. Young,* 218 Md. 338, 146 A.2d 884 (1958) (limitations begin to run when injury occurs unless injury is latent or trivial).

In 1957, the Legislature amended the Act, enacting § 39 in lieu of § 38. Section 39(a) of Art. 101 read:

"(a) *Accidental injury; report of physician; failure to file application as bar.*—When an employee is entitled to benefits under this article, he shall file with the Commission his

application and the report of his physician, provided he was attended by a physician of his own selection, within sixty days after the date of his accidental injury, for which compensation is claimed, and failure to do so, unless excused by the Commission, either on the ground that the insurance carrier or the employer has not been prejudiced thereby, or for some other sufficient reason, shall be a bar to any claim under this article; *provided, however, that failure of an employee to file a claim for compensation within eighteen months* [5] *from the date of the accident shall constitute a complete bar to any claim under this article."* (Emphasis and footnote added.)

We glean from this significant alteration in the language triggering the limitations period, from "beginning of his disability" to "date of the accident," that the General Assembly clearly intended to eliminate or at least reduce the controversy and litigation over the inception of the limitations period by setting an externally verifiable date. Our analysis of the legislative intent is supported by an eminent authority on Maryland workers' compensation law and by the Court of Special Appeals in the only case addressing this particular issue since the amendment of the statute. *See* Maurice J. Pressman, *Workmen's Compensation in Maryland*, § 3–15 (1977); *Dintaman v. Bd. of County Comm'rs of Prince George's County*, 17 Md.App. 345, 303 A.2d 442 (1973). As a result of the amended language, the limitations period was less subject to manipulation or debate: a claim for compensation had to be filed before two years from the date of the accident causing the injury and disability or the claim was completely barred.

■ DeBusk argues that the 1991 revision of the Code, which included a complete recodification of the Act, intentionally restored the date the limitations period begins to run to the date of compensable injury. We are not persuaded.

---

**5.** The length of the limitations period was extended from eighteen months to two years in 1960. Ch. 33 of the Acts of 1960.

During the 1991 revision, Art. 101 was repealed, the Act was recodified as Title 9 of the new Labor & Employment Article, and § 39 of Art. 101 became § 9–709 of the new Article. The language of the statute was altered slightly to the current language by which the instant case is governed, which reads: "[I]f a covered employee fails to file a claim within two years after *the date of the accidental personal injury,* the claim is completely barred." (Emphasis added.) DeBusk bases her contention on the term "accidental personal injury," which she claims returns the focus to the injury arising out of the accident and not the accident itself. Aside from the petitioner's strained attempt to avoid the plain meaning of the language, a close examination of the legislative history of the term "accidental personal injury" reveals no intent on the part of the Legislature to return to a pre–1957 interpretation of the date the limitations period begins to run.

Section 9–709, as enacted by ch. 8 of the Acts of 1991, uses the term "date of the accidental injury," omitting the word "personal," in place of "date of the accident" found in former Art. 101, § 39. According to the Revisor's Note found in the Laws of Maryland 1991, ch. 8, at 934, a source to which we regularly turn concerning the intent of the Legislature, the term was "new language *derived without substantive change* from former Art. 101, § 39(a). . . ." (Emphasis supplied.) During the same legislative session, by ch. 21 of the Acts of 1991, § 9–709 was repealed and re-enacted with amendments, which consisted solely of the insertion of the word "personal" in between the words "accidental" and "injury," for the obvious purpose of clarifying that the Act applies to personal and not property "injury." Neither the Revisor's Note nor any of the changes to the language of the statute supports the petitioner's argument that the Legislature reinstated the pre–1957 focus on the date of disability.

Careful readers of the Code will note that the "Special Revisor's Note" found after § 9–709 in the Labor & Employment Article deletes the language "without substantive change" found in the "Revisor's Note" following § 9–709 in ch. 8 in the Laws of 1991. The deletion of the phrase "without

substantive change" does not mean the change is necessarily substantive, however; the Revisor of Statute's standard operating procedure is to delete the phrase whenever an enactment is subsequently affected, either technically or substantively, by a second enactment before the first enactment is reflected in the Code itself. Here, § 9–709 as enacted by ch. 8 *was* affected later in the 1991 session by ch. 21, the Labor & Employment Article Cross–References and Corrections bill. Thus, although cross-reference and correction bills are not considered to be substantive, the final version of § 9–709 did not include, as a matter of Code revision procedure only, the original Revisor's Note language from ch. 8.

■ This Court consistently has presumed that general recodifications of statutes, such as Title 9 of the Labor & Employment Article, are for the purpose of clarity only and not substantive change, unless the language of the recodified statute unmistakably indicates the intention of the Legislature to modify the law. *Duffy v. Conaway*, 295 Md. 242, 257–58, 455 A.2d 955, 962–63 (1983); *In re Special Investigation No. 236*, 295 Md. 573, 576–77, 458 A.2d 75, 76 (1983); *Bureau of Mines of Maryland v. George's Creek Coal & Land Co.*, 272 Md. 143, 155, 321 A.2d 748, 754–55 (1974); *Welch v. Humphrey*, 200 Md. 410, 417, 90 A.2d 686, 689 (1952). Neither the history of this particular recodification nor the language of the statute of limitations itself "unmistakably" indicates that the Legislature intended with this minor wording change to focus on the date of compensable injury instead of the date of the accident; to the contrary, as another well-known authority on Maryland workers' compensation law put it,

> "[i]t should be borne firmly in mind that the 1991 reformatting of the Act was nothing more nor less than a stylistic change. The revisors had no authority to make any substantive changes in the law whatsoever. Any changes perceived by a comparison between companion provisions in Article 101 and Title 9 are illusory."

Gilbert & Humphreys, *Maryland Workers' Compensation Handbook, supra*, § 2.3 at 34.

c.

■ All of the sections of the Act, as with all statutes which form a general scheme, must be read and construed together to arrive at the intent of the Legislature. *Subsequent Injury Fund v. Chapman*, 11 Md.App. 369, 274 A.2d 870, *aff'd*, 262 Md. 367, 277 A.2d 444 (1971). As the Hospital points out in its brief to this Court, numerous other statutes within the Act support our interpretation of the term "date of the accidental personal injury."

We think the most persuasive argument in this regard is the existence of subsection (c) within § 9–709 itself. Subsection (c) applies to accidental injuries caused by ionizing radiation, and because of the latent nature of such injuries, specifically provides for the limitations period to run from the date of disablement or the date the employee knew the disablement was caused by the radiation. Here the Legislature has clearly determined that the two-year statute of limitations from the date of the accident should not apply to a specific type of injury, and has thus included a clear statement of a single exception to the general rule.

■ If the general rule was as petitioner describes it, the Legislature would not have found it necessary to include an exception for ionizing radiation injuries. We will not read the statute to render subsection (c) unnecessary, as one of our cardinal rules of statutory construction is not to find any word, clause, sentence, or phrase (nor, we might add, statutory subsection) superfluous, meaningless, or nugatory, unless we have some clear indication to the contrary. *Management Personnel Services, Inc. v. Sandefur*, 300 Md. 332, 341, 478 A.2d 310, 314–15 (1984); *Board of Educ. of Garrett County v. Lendo*, 295 Md. 55, 62–63, 453 A.2d 1185, 1189 (1982); *Hirsch v. Maryland Dept. of Natural Resources, Water Resources Administration*, 288 Md. 95, 116, 416 A.2d 10, 21 (1980).

DeBusk makes a parallel argument in her brief that construing the term "accidental personal injury" to mean "accident" strips the words "personal" and "injury" of all meaning and renders them superfluous and nugatory. Her argument

is disingenuous. The terms being construed are not "accident" and "accidental personal injury," but rather "the date of the accident" and "the date of the accidental personal injury." "Accident" and "accidental personal injury" are clearly only synonymous within the context of setting a date on which the limitations period begins; "accidental personal injury" merely clarifies that the "accident" which triggers the limitations period is the same accident which caused the "personal injury."

### d.

In *Dintaman v. Bd. of County Comm'rs of Prince George's County*, 17 Md.App. 345, 303 A.2d 442 (1973), the intermediate appellate court considered the issue of latent injury in workers' compensation cases. A firefighter who asserted that he was not aware of his disabling injury caused by a work accident until more than two years after the accident occurred filed a workers' compensation claim, which the Commission disallowed based on the employee's failure to file his claim within the two-year limitations period in § 39(a) of Art. 101. The firefighter appealed to the circuit court, contending that limitations only began to run on a latent injury when an employee knew or should have known of the injury. The circuit court granted summary judgment in favor of the employer. The Court of Special Appeals, after reviewing the history of the statute of limitations for the filing of accidental injury workers' compensation claims, affirmed the circuit court's judgment. The court noted:

> "Both the amendment and the history that preceded it make it abundantly clear that it was the intent of the Legislature that the beginning date for the period to bar a claim should be the date of the accident, not the date of disability."

*Dintaman*, 17 Md.App. at 349, 303 A.2d at 444.

The Court of Special Appeals correctly relied on *Dintaman* in the case *sub judice*, as we shall, because its reasoning is unassailable. The cases which hold otherwise, to which Petitioner refers in her brief to this Court, are inapposite because all interpret the pre–1957 language. We hold that the two-

year statutory limitations period for the filing of workers' compensation claims based on accidental personal injuries begins running as of the date of the accident, not the date that the employee became aware of a compensable injury or disability. Thus, petitioner DeBusk filed her claim one month and seven days too late, and her claim is barred as a matter of law.

### III.

■ Debusk argues that our interpretation of § 9–709 of the Act is unconstitutional under the Fourteenth Amendment to the United States Constitution and Art. 24 of the Maryland Declaration of Rights, because she and others similarly situated are denied equal protection under the law.[6] Although DeBusk does not clearly state which others are "similarly situated," we assume she is referring to employees injured during and in the scope of employment who are precluded by the Act from pursuing tort causes of action against their employers.

As the facts before us do not implicate a suspect class nor a fundamental right, we do not engage in heightened scrutiny of the Legislature's purpose in enacting the statute, but rather review the statute applying the "rational basis" test. *See Maryland Aggregates v. State,* 337 Md. 658, 673 n. 10, 655 A.2d 886, 893–94 n. 10 (1995) (no merit to claim that legislation affecting a common law right should be subject to heightened scrutiny); *Verzi v. Baltimore County,* 333 Md. 411, 425, 635 A.2d 967, 970 (1994); *Murphy v. Edmonds,* 325 Md. 342, 367, 601 A.2d 102, 114 (1992); *Whiting–Turner Contracting Co. v. Coupard,* 304 Md. 340, 352, 499 A.2d 178, 185 (1985); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–02 (1970). Thus, if the implied distinction in

---

**6.** We note that the entire worker's compensation scheme is constitutional under both the Federal and Maryland constitutions. *Board of County Comm'rs v. Colgan,* 274 Md. 193, 199, 334 A.2d 89, 93 (1975), *aff'g* 21 Md.App. 331, 337, 320 A.2d 82, 86 (1974) ("Constitutionality of State legislation in the area of workmen's compensation is too well-established to permit of further debate").

§ 9–709, between those who may claim recovery for personal injury in civil actions and those precluded from doing so because their exclusive remedy is under the workers' compensation law, is rationally related to a legitimate government objective and is not arbitrary, the statute is not unconstitutional under the equal protection concepts in either the Federal or Maryland constitutions.

We have already amply discussed and acknowledged the legitimate objectives of certainty and predictability of the entire workers' compensation system and specifically the externally verifiable limitations period for employees injured on the job. Section 9–709, as we have interpreted it, is clearly rationally related to those legitimate legislative objectives. We find no merit in DeBusk's claim that our interpretation of the statute of limitations is unconstitutional.

## IV.

While we do not question the existence or severity of DeBusk's injury, she knew she was seriously injured enough to seek medical testing and chiropractic care for almost the entire two years before she brought the claim. Even if we were inclined to interpret the statute of limitations to incorporate the pre–1957 discovery rule, which we are not, the facts in the case before us would not present the appropriate situation in which to draw such a conclusion. DeBusk was admittedly aware of the exact accident which caused her injury; she noted the date and reported the accident to her supervisor immediately. She then was aware for many months that the injury was more than just a "minor pull," so the injury could not be called latent or trivial even if the pre–1957 rule applied.

Our holding today reinforces the intended predictability of the workers' compensation scheme. Debusk's attorney, in argument to the circuit court, demonstrated exactly why the rule DeBusk sought is unworkable in its vagueness and subjectivity:

"The point is that there comes a point in time when if it doesn't get better then the person is charged with knowing

that they have a compensable injury.... But if time goes by and it doesn't get better, there comes a point in time when you know, hey, look, maybe this is more than just something, a minor pull, and it's going to go away."

*JUDGMENT AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*