686 A.2d 1161

**BALTIMORE COUNTY, Maryland**

v.

**Frank S. FLEMING.**

**No. 653, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Dec. 30, 1996.

Virginia W. Barnhart, County Attorney and Michael G. Comeau, Assistant County Attorney, Towson, for Appellant.

Harold R. Weisbaum (Blum & Weisbaum, P.A., on the brief), Baltimore, for Appellee.

Argued before HOLLANDER, EYLER and THIEME, JJ.

EYLER, Judge.

The parties, proceeding on an Agreed Statement of Facts, inquire as to whether Baltimore County, appellant, is entitled to an offset against Workers' Compensation benefits based on length of service retirement benefits that Frank S. Fleming, appellee, receives from appellant. More specifically, while both parties agree that appellant is not entitled to an offset under the law in effect prior to 1991, art. 101, § 33, appellant argues that the language of the current law, § 9–610 of the Labor & Employment Article, Md.Code Ann. (hereinafter "LE § _____"), has been materially changed by the legislature and that the plain meaning of the current law entitles appellant to an offset. Appellee disagrees and, alternatively, ar-

gues that the award is governed by art. 101, § 33 "as it existed at the time the claim was filed." We will not reach the issue of statutory interpretation as it is the law in effect at the time of the accidental injury in 1984 that governs.

### Agreed Statement of Facts

Appellee was employed as an emergency apparatus operator with the Baltimore County Fire Department. On December 12, 1984, while acting within the scope of his employment, he was involved in an accident and injured his right shoulder. On January 31, 1986, appellee filed a claim with the Maryland Workers' Compensation Commission. This claim was not contested by appellant but was treated as a compensable accidental injury with an average weekly wage of $505. In April 1991, appellee filed Issues with the Commission, seeking permanent partial disability as a result of the injury to appellee's right shoulder. In December 1991, the parties stipulated to an award of 15% to the body for permanent partial disability.

In October 1994, appellee again filed Issues with the Commission, contending that his right shoulder condition had worsened. At approximately the same time, appellee submitted the necessary documentation to obtain his length of service retirement from appellant. Based upon his years as a career firefighter, plus his volunteer and military service, appellee was granted a service retirement effective January 1, 1995. It was appellee's understanding that a length of service retirement could not be used to offset workers' compensation benefits.

Appellee's final average salary for retirement purposes was $46,855, and his initial yearly retirement benefit was $36,916. The last date that permanency benefits were paid, pursuant to the 1991 stipulation, was January 3, 1992. Appellee's claim for worsening of condition was heard by the Commission on March 3, 1995, subsequent to appellee's retirement.

Appellant asserted its right to an offset pursuant to LE § 9-610. The Commission, on October 6, 1995, found that

appellee's condition had worsened 5% to a total of 20% permanent partial disability under "other cases" and denied appellant's right to an offset, presumably based on its reading of LE § 9–610. This resulted in the payment of 25 weeks of benefits at $104 per week, payable for a period beginning January 4, 1992; consequently, the entire award was payable over a period prior to appellee's retirement.

Appellant noted an appeal to the Circuit Court for Baltimore County. After the trial court affirmed the Commission's decision, a timely appeal was noted to this Court.

## Discussion

The parties have briefed at length, and urge us to decide, an interesting issue of first impression—the status of *Newman v. Subsequent Injury Fund,* 311 Md. 721, 537 A.2d 274 (1988), in light of the 1991 recodification of the Workers' Compensation Act. Applying art. 101, § 33, the predecessor to LE § 9–610, the Court of Appeals in *Newman* held that governmental employers could not offset workers' compensation benefits by length of service retirement benefits. The Court interpreted § 33 to permit offset only when the governmental employer had provided benefits that were similar to workers' compensation benefits, and it distinguished the cases permitting offsets by retirement benefits because all of those cases had involved *disability,* rather than length of service, retirement benefits. The Court held that, while disability retirement benefits were similar to workers' compensation benefits, length of service retirement benefits were not similar.

Appellant argues that when § 33 was recodified, it was materially changed because the word "similar" was deleted from the statute. LE § 9–610. Appellant argues that the legislature, cognizant of *Newman,* intended to change the law to permit offsets when length of service retirement benefits are paid to the governmental employee. Appellee argues that the 1991 recodification did not materially change the law and that *Newman* must still apply. Alternatively, appellee argues that if the law has changed, such change should not be applied

retroactively to appellee's claim, as it would adversely affect appellee's vested rights.

Section 9–610 is located in Subtitle 6 which is entitled "Benefits". The first section in that Subtitle, § 9–601, provides as follows:

### § 9–601. Construction of subtitle.

A provision of this subtitle may not be construed to change:

(1) a law relating to an accidental personal injury or an occupational disease, that occurred before the effective date of the provision and for which a claim is made under this title; or

(2) the payment basis in effect when an accidental personal injury or an occupational disease, for which a claim is made under this title, occurred.

The express terms of § 9–601 preclude us from applying any section of Subtitle 6, including § 9–601, to change the law that was in effect at the time of appellee's accidental injury in 1984. Even assuming that § 9–610 effected the change in law that appellant argues, such change may not be applied to this case pursuant to the express terms of § 9–601. By enacting § 9–601, the General Assembly has fixed the compensation rate as of the time of the accidental injury or occupational disease, and it is the statute in effect at the time of injury or disease that governs. Although in this case the claimant's worsening of condition occurred after the 1991 recodification, and his right to additional benefits accrued after the recodification, the effect of § 9–601 is essentially to freeze the entitlement to benefits as of the date of injury.[1]

---

1. Although § 9–601, and its predecessor, § 36(11), were drafted to govern all of the benefits provisions, we note that Part III of Subtitle 6, the subpart dealing with temporary total disability, has its own provision, § 9–619, that accomplishes the same aims as § 9–601. Both provisions were enacted in 1975 and both were located in former § 36. Section 9–619 was located in former § 36(2), which governed temporary total disability benefits, and superseded prior amendments which had specified particular dates (e.g., "This section shall only apply to injuries occurring on or after July 1, 1968."). The redundancy of these

Section 9–601 is not a new provision; it first came into being as § 36(11) in 1975. Laws of Maryland 1975, ch. 639. Despite its age, however, it has languished in relative obscurity. Indeed, it was overlooked by the parties in this case, and apparently, by the Commission and the circuit court. Instead of arguing the significance of § 9–601, the parties argued the issue of retroactivity in terms of vested rights. We do not even reach the potentially complex question of vested rights because § 9–601 expressly prohibits the application of § 9–610 to a case involving an accidental injury that predates the enactment of § 9–610.[2]

Prior to the enactment of § 36(11), the General Assembly, on an *ad hoc* basis, often would expressly provide that certain amendments would not apply to injuries predating the enactment of said amendments. *See, e.g.*, Laws of Maryland 1974, ch. 450; 1973, ch. 671; 1971, ch. 404; 1920, ch. 456; *State Accident Fund v. Jacobs*, 140 Md. 622, 624, 118 A. 159 (1922) (commenting on chapter 456, Acts of 1920). While the genesis of the principle that a claimant's rights are governed by the statute in effect at the time of injury is the Act itself, the principle has generally found favor in case law, independent of the Act. In 1949, the Court of Appeals cited *Jacobs* for this proposition without discussing the fact that *Jacobs* involved

---

two sections may be due to the fact that § 36(11) was introduced in a House Bill (H.B. 4, ch. 639, Acts of 1975), while the relevant portion of § 36(2) was introduced in a Senate Bill (S.B. 970, ch. 638, Acts of 1975).

**2.** We have tried to avoid the use of the term "retroactive" because it is not as descriptive as the actual terms of § 9–601. In one sense, application of § 9–610 to this case could be considered a prospective application as the worsening of condition occurred and entitlement to additional benefits accrued after the enactment of § 9–610. Application of § 9–610 to this case would not involve the recomputation of benefits that were paid to appellee for his initial accidental injury and, thus, would not be retroactive in that sense. *See Cooper v. Wicomico Co.*, 278 Md. 596, 604–05, 366 A.2d 55 (1976) (Eldridge, J. dissenting) (discussing statute that, although applicable to retroactive class of claimants, those receiving benefits for a permanent total disability caused by an injury occurring before the enactment of the statute, was prospective in that it affected only payments to be made after the effective date of the amendment).

application of a statute, chapter 456 of the Acts of 1920, which expressly provided that "nothing in this act shall affect any rights arising from injuries or disabilities received prior to June 1, 1920." *Furley v. Warren–Ehret Co.*, 195 Md. 339, 347–48, 73 A.2d 497 (1950). Given that the amendment at issue in *Furley,* chapter 462 of the Acts of 1945, did not contain similarly limiting language, *Furley* resulted in an extension of the holding in *Jacobs.* Since that time, the Court of Appeals apparently has adhered to the *Furley* holding. *See, e.g., Mutual Chemical Co. of America v. Pinckney,* 205 Md. 107, 112, 106 A.2d 488 (1954) (citing *Furley* ); *Bowen v. Smith,* 342 Md. 449, 453 n. 2, 677 A.2d 81 (citing *Pinckney* and *Fikar v. Montgomery County,* 333 Md. 430, 432 n. 1, 635 A.2d 977 (1994)); *Fikar,* 333 Md. at 432 n. 1, 635 A.2d 977 (no citation). *Cf. Shifflett v. Powhattan Mining Co.,* 293 Md. 198, 200, 442 A.2d 980 (1982) (citing 2 A. Larson, *Workmen's Compensation Law* § 60.50 (1981 rev. ed.)). Despite this line of cases, it is important for practitioners and courts to be cognizant of the statutory genesis of the concept that the law in effect at the time of injury applies. Departure from the statute has the potential to raise certain red herrings such as the issue of vested rights.

Applying former § 33(c), Md. Ann.Code (1957, 1985 Repl. Vol.), the law in effect in 1984,[3] we hold that Baltimore County is not entitled to an offset and affirm the judgment of the circuit court.

JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.

---

**3.** This version of § 33 was the version in effect in 1984, and was not amended between 1980 and 1985.