8 A.3d 737

**Edy SANCHEZ**

v.

**POTOMAC ABATEMENT, INC., et al.**

**No.  65, Sept. Term, 2009.**

Court of Appeals of Maryland.

Nov. 19, 2010.

Harvey Greenberg (Law Offices of Harvey Greenberg, Towson, MD), on brief, for petitioner.

Richard W. Scheiner (Mary W. Wiethorn of Semmes, Bowen & Semmes, Baltimore, MD), on brief, for respondents.

Michael L. Dailey, Danielle E. Marone, Schmidt, Dailey, O'Neill, LLC, Baltimore, MD, for Amicus Curiae memorandum of Maryland Defense Counsel, Inc. in Support of Respondent's Brief.

Sean McMurrough, Property Casualty Insurers' Association of America, Des Plaines, IL, for Amici Curiae brief of Anne Arundel County, Maryland, Baltimore County, Maryland, Carroll County, Maryland, D.M. Bowman Trucking, Inc., Harford County, Maryland, Injured Workers' Insurance Fund, Montgomery County, Maryland, Prince George's County, Maryland, Property Casualty Insurers' Association of America, Schuster Concrete.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

MURPHY, J.

This case presents the issue of whether an injured employee's permanent partial disability benefits (PPD) are "capped" by the State average weekly wage (SAWW) in effect on the day when the injury occurred, or by the SAWW for the year in which the employee's PPD commence. Edy Sanchez, Petitioner, who was injured on September 22, 1998, argues that his award should be based upon the 2000 SAWW because 2000 is the year in which his right to PPD was established. After this argument was rejected by the Workers' Compensation Commission (the Commission), the Circuit Court for Baltimore County, and the Court of Special Appeals,[1] Petitioner filed a petition for writ of certiorari in which he presented this Court with a single question:

---

1. The opinion of the Court of Special Appeals was not designated "for reporting" pursuant to Md. Rule 8–605.1(a).

Whether the Maryland Statewide Average Weekly Wage index [ ] used to calculate and establish the maximum or cap of weekly compensation resulting from a PPD [permanent partial disability] of 185 weeks is that index on the date of the accident or on the date of the right to such compensation commences[?]

We granted that petition. 409 Md. 47, 972 A.2d 861 (2009). For the reasons that follow, we hold that the applicable SAWW index is the index in effect on the date of the employee's injury. We shall therefore affirm the judgment of the Court of Special Appeals.

### Background

Each year the Department of Labor, Licensing, and Regulation determines the "State Average Weekly Wage" as required by § 9–603 of the Labor and Employment Article of the Maryland Code (LE).[2] Petitioner was awarded 185 weeks of benefits under LE § 9–629, which provides:

If a covered employee is awarded compensation for a period equal to or greater than 75 weeks but less than 250 weeks, the employer or its insurer shall pay the covered employee weekly compensation that equals *two-thirds of the average weekly wage of the covered employee but does not exceed one-third of the State average weekly wage.*

(Emphasis added).

According to Petitioner, because the 2000 SAWW must be used to calculate the cap, he is entitled to weekly benefits in the amount of $211.00. On the other hand, if the 1998 SAWW is used, Petitioner is entitled to weekly benefits in the amount of $191.00.[3]

---

**2.** "On or before December 15 of each year, the Department of Labor, Licensing, and Regulation shall: (1) determine the State average weekly wage as of July 1 of that year; and (2) report the State average weekly wage to the Commission." LE § 9–603.

**3.** Petitioner's AWW at the time of injury was $428.34. Two-thirds of that amount is $285.55. Because the 1998 SAWW was $573, Petitioner's PPD award was "capped" at one-third of that SAWW.

The unreported opinion of the Court of Special Appeals includes the following factual background:

In September 1998, Sanchez suffered an injury in the course of his employment with the [Respondent], Potomac Abatement, Inc. Eight years later, on August 3, 2006, [t]he Commission granted Sanchez an award, to be paid by [Respondent] or its insurer, the co-[respondent], AIU Insurance Co. The award consisted of two parts. First, Sanchez was awarded compensation for a TTD [temporary total disability], to be paid retroactively for the period of March 4, 1999, to January 13, 2000. The Commission also awarded Sanchez compensation for a PPD, to be paid for a period beginning on January 14, 2000. This latter portion of the award is the subject of Sanchez's challenge.

The Commission concluded that Sanchez's injury is an "other case," under Section 9–627(k), and that he has lost the industrial use of 30% of his body. Accordingly, the Commission calculated that Sanchez is entitled to 150 weekly payments (30% of 500), qualifying him as a Tier 2 PPD claimant. As a Tier 2 PPD claimant, Sanchez would be entitled to the lesser of two thirds of his AWW [average weekly wage] and one third of the SAWW [state average weekly wage]. In this case, one third of the SAWW was the lesser, and therefore applicable, amount. Pursuant to its annual notices of the SAWW, the Commission applied the value of the SAWW for the year when Sanchez was injured—$573 for 1998—and calculated that Sanchez was entitled to weekly payments of one third of that amount, *i.e.*, $191. Commission, Maximum Rate of Benefits for Calendar Year Beginning January 1, 1998. . . .

On August 28, 2006, Sanchez filed a petition for judicial review in the Circuit Court for Baltimore County, requesting a jury trial. Sanchez then filed a motion for partial summary judgment, initially arguing that, for each weekly payment, the Commission should have applied the SAWW of the year in which the payment was due—*i.e.*, the 2000 SAWW for payments due in 2000, the 2001 SAWW for payments due in 2001, and the 2002 SAWW for payments

due in 2002. However, before the court ruled on that motion, Sanchez changed his argument, asserting that the Commission should have solely used the SAWW for the year 2000, the year that his right to the PPD award commenced. Eventually, the court held a hearing on the matter, and then denied the motion on September 19, 2007.

Based on the ensuing jury trial and verdict, the circuit court did conclude that Sanchez had suffered impairment to 37% of his body, (rather than 30% as the Commission had found), and that he was therefore entitled to 185 rather than 150 weekly payments. Accordingly, the court vacated the Commission's award and remanded the case for the Commission to adjust the award.

As noted above, Petitioner requests that this Court reverse the judgment of the Court of Special Appeals, and direct that his PPD award be "adjusted."

### Discussion

■ Section 9–601 of the Labor and Employment Article provides:

A provision of this subtitle may not be construed to change:
(1) a law relating to an accidental personal injury or an occupational disease, that occurred before the effective date of the provision and for which a claim is made under this title; or
(2) *the payment basis in effect when an accidental personal injury or an occupational disease, for which a claim is made under this title, occurred.*

(Emphasis added).

■ "The higher the AWW, the higher the benefits the claimant receives *up to any statutory caps in effect for the year in which the injury occurred."* Richard P. Gilbert, *Maryland Workers' Compensation Handbook* § 9.06 (3rd ed.2007). (Emphasis supplied). According to Petitioner, however, because LE § 9–629 does not expressly state which year's SAWW should be used to determine the cap on Petitioner's benefits that ambiguity should be resolved in his

favor.[4] While rejecting that argument, the Court of Special Appeals stated:

Notwithstanding Sanchez's Herculean efforts to persuade us to make new law, we conclude that the issue Sanchez asks us to decide is already settled. This Court has previously stated that the SAWW of the year of the accidental injury controls the amount of a PPD award. *Marshall v. Univ. of Md. Med. Sys. Corp.*, 161 Md.App. 379, 386 [869 A.2d 391] (2005); *cf.* § 9–628 (Tier 1 PPD award capped by statutory ceiling value determined by date of injury). Granted, this case is distinguished by the fact that Sanchez's right to PPD payments commenced years after his injury. *See Waters v. Pleasant Manor Nursing Home*, 361 Md. 82, 99 [760 A.2d 663] (2000). Nevertheless, "[t]he general rule in workers' compensation benefit cases is that the date of injury controls for determining compensation benefits." *Id.* at 96 [760 A.2d 663]. The date of injury is considered to be the date of the accident, not the date on which the resulting disability manifests itself. *Id.* at 99 [760 A.2d 663]; *see also DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 440 [677 A.2d 73] (1996). (interpreting statute of limitations applicable to workers' compensation claims).

The statutory basis of the general rule is Section 9–601, which "fixe[s] the compensation rate as of the time of the accidental injury." *Baltimore County v. Fleming*, 113 Md. App. 254, 258 [686 A.2d 1161] (1996). In particular, § 9–601 states: "A provision of this subtitle may not be construed to

---

**4.** The purpose of the Workers' Compensation Act, codified in the Annotated Code of Maryland, Labor and Employment Article, Section 9–101 *et. seq.*, is to "provide employees with compensation for loss of earning capacity, regardless of fault, resulting from accidental injury . . . occurring in the course of employment." *DeBusk v. Johns Hopkins Hospital*, 342 Md. 432, 437, 677 A.2d 73, 75 (1996). This compensation "substitutes for an employee's common law right to bring a fault-based tort suit against an employer for damages resulting from the employee's injury or disablement on the job." *Id.* at 438, 677 A.2d at 75. "[T]he Act strikes a[n] important balance between the need to provide some form of financial benefits to the injured or sick employees and the need, of both employers and employees, to avoid expensive and unpredictable litigation over accidents in the workplace." *Id.*

change: ... (2) the payment basis in effect when an accidental personal injury ... occurred." (Emphasis added.)

Apart from case law, there has been legislative acquiescence in the Commission's consistent practice of using the SAWW of the year of injury ever since the General Assembly first directed the Commission to cap awards using the SAWW in 1975. The Commission's expertise in administering the workers' compensation statutes, as well as the legislature's acquiescence to the Commission's longstanding practice, indicate that the Commission is operating in accord with the legislative will. As the Court of Appeals said in a different case affirming the Commission's interpretation of the workers' compensation statutes:

> [a] long-standing administrative interpretation is particularly persuasive ... when the administrative interpretation was established at the same time as the legislative enactment and continued uniformly thereafter. *Balto. Gas & Elec. v. Public Serv. Comm'n,* 305 Md. 145, 161, 501 A.2d 1307 (1986); *Swarthmore Co. v. Kaestner,* 258 Md. 517, 528, 266 A.2d 341 (1970). In a like vein, the consistent construction by an administrative agency responsible for administering a statute, particularly where the administrative interpretation has been made known to the legislature in various annual reports of the agency, as in the present case, is entitled to considerable weight. *National Asphalt v. Prince Geo's Co.,* 292 Md. 75, 80, 437 A.2d 651 (1981).

*Falik v. Prince George's Hosp. & Med. Ctr.,* 322 Md. 409, 416 [588 A.2d 324] (1991); *accord Colburn v. Dep't of Pub. Safety & Corr. Servs.,* 403 Md. 115, 128 [939 A.2d 716] (2008) (citing *Schwartz v. Md. Dep't of Natural Resources,* 385 Md. 534, 554 [870 A.2d 168] (2005)).

As of September 1998, the date of Sanchez's injury, the payment basis then in effect incorporated that year's SAWW value, $573. Nothing in the law at that time entitled Sanchez to the benefit of a later SAWW value. Accordingly, the Commission was correct to apply the 1998 SAWW to Sanchez's claim.

We agree with that analysis, which is consistent with two opinions that the Court of Special Appeals has designated "as precedents" pursuant to Md. Rule 8–605.1(a).

In *Baltimore County v. Fleming,* 113 Md.App. 254, 686 A.2d 1161 (1996), the Court of Special Appeals stated:

By enacting § 9–601, the General Assembly has fixed the compensation rate as of the time of the accidental injury or occupational disease, and it is the statute in effect at the. time of injury or disease that governs.

\* \* \*

Prior to the enactment of § 36(11), the General Assembly, on an *ad hoc* basis, often would expressly provide that certain amendments would not apply to injuries predating the enactment of said amendments. *See, e.g.,* Laws of Maryland 1974, ch. 450; 1973, ch. 671; 1971, ch. 404; 1920, ch. 456; *State Accident Fund v. Jacobs,* 140 Md. 622, 624, 118 A. 159 (1922) (commenting on chapter 456, Acts of 1920). While the genesis of the principle that a claimant's rights are governed by the statute in effect at the time of injury is the Act itself, the principle has generally found favor in case law, independent of the Act. In 1949, the Court of Appeals cited Jacobs for this proposition without discussing the fact that Jacobs involved application of a statute, chapter 456 of the Acts of 1920, which expressly provided that "nothing in this act shall affect any rights arising from injuries or disabilities received prior to June 1, 1920." *Furley v. Warren–Ehret Co.,* 195 Md. 339, 347–48, 73 A.2d 497 (1949) [ (1950) ].... [I]t is important for practitioners and courts to be cognizant of the statutory genesis of the concept that the law in effect at the time of injury applies. Departure from the statute has the potential to raise certain red herrings such as the issue of vested rights.

*Id.* at 258–260, 686 A.2d at 1163–64.

In *Marshall v. Univ. of Md. Med. Sys. Corp.,* 161 Md.App. 379, 869 A.2d 391 (2005), the Court of Special Appeals stated:

Once the duration of [PPD] compensation is ascertained, the award amount is calculated according to LE sections 9–

628 to 9–630. These sections create a three tier system for PPD benefits, which depends on the number of weeks compensation is awarded. For first tier benefits, or compensation for less than 75 weeks, "the employer or its insurer shall pay the covered employee compensation that equals one-third of the average weekly wage of the covered employee but does not exceed [a maximum rate, which depends on the year of the accident.]" LE § 9–628.

For second tier benefits, or 75 to 249 weeks compensation, the covered employee is paid "weekly compensation that equals two-thirds of the average weekly wage of the covered employee but does not exceed one-third of the State average weekly wage." LE § 9–629.

The third tier, or "serious disability" benefits, addresses compensation for 250 weeks or more. [LE § 9–630.]

\*     \*     \*

Likewise, the "ceiling" for first tier benefits depends solely on the date of accidental injury. *See* LE § 9–628(b)–(e). Section 9–628(b)–(e) creates four first tier benefit rate maximums, delineated by the accidental injury date. For instance, a covered employee cannot be compensated more than $94.20 a week for a "claim arising from events occurring on or after January 1, 1993," whereas an employee injured on or after January 1, 2000, cannot be compensated more than $114 a week. *See id.*

Compensation for second and third tier benefits cannot exceed a set percentage of the State average weekly wage. *See* LE §§ 9–629, 9–630 (one-third and three-fourths, respectively). The State average weekly wage, in turn, is calculated on a **yearly** basis by the Department of Labor, Licensing, and Regulation. *See* LE § 9–603(a).

Finally, LE section 9–604(a) requires the Commission to "compute all compensation awarded under this title in accordance with **the applicable schedule** in this subtitle." (Emphasis added). Construing the above sections together, we hold that the Legislature intended that PPD benefits be

awarded at rates applicable at the time of the accidental injury.

*Id.* at 383–84, 386, 869 A.2d at 394–95 (footnotes omitted) (emphasis in original).

In *Waters v. Pleasant Manor Nursing Home,* 361 Md. 82, 760 A.2d 663 (2000), this Court answered the question, "Is the total amount of Petitioner's permanent total disability compensation established by the statute in effect when Petitioner became permanently totally disabled?" The petitioner in that case had requested that the Commission "reopen" her case and award her additional permanent total disability benefits. She argued to this Court that "the date of the Commission's finding that she was permanently totally disabled should govern the amount of her benefits, rather than the date of [her] injury." *Id.* at 87, 760 A.2d at 666. Before distinguishing claims arising out of an "occupational disease" from claims arising out of an "accidental injury," this Court reaffirmed the proposition that "[t]he general rule in workers' compensation benefit cases is that the date of injury controls for determining compensation benefits." *Id.* at 96, 760 A.2d at 671. As to the distinction between those claims, this Court stated:

It has been established that the date of injury for determining benefits for an occupational disease is the date of disablement and the date of determination for accidental injuries is the date of occurrence of the injury. This difference in analysis is based upon the fundamental differences in definition between an occupational disease and an accidental injury.

The Court of Special Appeals has stated aptly that "the defining difference between accidental injury and occupational disease is that the cause of the former is unusual or unexpected and the cause of the latter is usual and a risk inherent to the nature of employment." *Luby Chevrolet v. Gerst,* 112 Md.App. 177, 191, 684 A.2d 868, 875 (1996). In addition, an occupational disease often develops over time and will manifest itself at some point after the encounter with its causation. *See Gerst,* 112 Md.App. at 193, 684 A.2d at 876. The court further noted that the Workers' Compen-

sation Act treats accidental injuries differently from occupational diseases. *Gerst,* 112 Md.App. at 192, 684 A.2d at 875. The significant difference for the present case is that for an occupational disease to be compensable under the Act, "it must cause some disablement." *Gerst,* 112 Md.App. at 192–93, 684 A.2d at 876 (citing *Miller v. Western Electric Co.,* 310 Md. 173, 185–86, 528 A.2d 486 (1987); *Lowery v. McCormick Asbestos Co.,* 300 Md. 28, 47, 475 A.2d 1168 (1984); *Shifflett [v. Powhattan Mining Company],* 293 Md. [198] at 201, 442 A.2d 980 [ (1982) ] ) (referring to Md.Code (1991 Repl.Vol., 1996 Suppl.), Labor and Employment Article, § 9–502(a)). For an accidental injury to be compensable, however, no disability is required; all that is required is the date of occurrence. *See Gerst,* 112 Md.App. at 193, 684 A.2d at 875.

The Court of Special Appeals acknowledged that "the date of disablement in an occupational disease case serves the same purpose as the date of occurrence in an accidental injury case." *Id.*

\*       \*       \*

. . . . It is necessary to fix the date in such a manner so as "to limit proof of causation problems and potential limitation problems." *Gerst,* 112 Md.App. at 193, 684 A.2d at 875. *Id.* at 98–100, 760 A.2d at 672–73.

Petitioner argues that his interpretation of LE § 9–629 is consistent with *Cline v. Mayor and City Council of Baltimore,* 13 Md.App. 337, 283 A.2d 188 (1971), *aff'd,* 266 Md. 42, 291 A.2d 464 (1972), which presented the question of whether the widow of a deceased worker was limited in recovering death benefits to the statutory amount in effect on the date of the deceased's injury rather than on the date of the worker's death. The holding in that case, however, is in no way inconsistent with our holding in the case at bar. As this Court stated in *Waters, supra:*

In *Cline,* the Court of Special Appeals was presented with the question of whether a surviving dependent of a deceased worker should recover the amount of death benefits provid-

ed by the statute in effect on the date of the injury or the amount permitted by the amended statute on the date of the death caused by the initial injury. *Cline,* 13 Md.App. at 340, 283 A.2d at 190. In *Cline,* Appellant's husband sustained an accidental injury at his place of employment on 3 April 1967. *Cline,* 13 Md.App. at 339, 283 A.2d at 189. On 2 June 1967, Appellant's husband died from his 3 April 1967 injury. *Id.* On 1 June 1967, the day before his death, the statute was amended to raise the maximum death benefits that a dependent could receive as a result of a death caused by an on-the-job accidental injury. *Id.* The court held that the statute in effect on the date of death is the applicable statute when the death is caused by the initial accidental injury because the survivor's benefits vest on the date of death. *Cline,* 13 Md.App. at 340–41, 283 A.2d at 190–91.

The court first pointed to a distinction present in the relevant statute. According to the statute, dependents may receive benefits under the following two scenarios: (1) when the employee dies from a cause unrelated to the compensable injury and there is a remaining award based on permanent total or permanent partial disability compensation; or (2) when the employee dies as a result of the compensable injury and death occurs within five years of the injury. *See Cline,* 13 Md.App. at 340, 283 A.2d at 190. According to the court, in the first scenario, the benefit belongs to the employee, and "those who take, in the event of his death, take under him, and not independently." *Id.* The court elaborated that the dependent's right to the benefits is governed by the statute in effect at the time of the injury. *Id.* (*citing Furley,* 195 Md. 339, 73 A.2d 497). In the second scenario, the court stated that "although the survivor's right to death benefits arises out of the compensable injury, it is the employee's death itself which is the compensable event, and the right of the surviving dependents to death benefits is separate and independent of the injured employee's rights and does not depend upon whether compensation was paid to the injured workman during his lifetime." *Cline,* 13 Md.App. at 340–41, 283 A.2d at 190 (*citing Sea Gull Special-*

*ty Co. v. Snyder,* 151 Md. 78, 134 A. 133 (1926)). Thus, the survivor's claim for benefits vests when the employee dies, as was the situation in Cline, and the employee's claim for benefits vests at the time of the injury.

Contrary to Petitioner's argument, her situation is more analogous to the first scenario, rather than the second scenario, discussed in *Cline.* Petitioner is not a dependent nor has there been a death; rather, the reasoning of the *Cline* court demonstrates that, in determining benefits for employees who suffer accidental injuries, it is the date of the injury that controls. The court stated that the amounts of compensation payable to the workman and his surviving dependents in cases where death is caused by the injury are separate and distinct, undoubtedly because their respective causes of action are based on different compensable events, *viz.,* injury in the case of the workman, and death in the case of the dependents.

*Id.* at 100–101, 760 A.2d at 673–74.

Although some states use different calculations to "cap" a PPD award, we have not found a single state statute that bases a PPD award on the SAWW in effect in the year when the benefits are awarded rather than the year in which the injury occurs.[5] The date of injury—rather than the date of the award—should be used to calculate PPD benefits in light

---

5. *See, e.g.,* Ala.Code § 25–5–68 (LexisNexis 2007); Alaska Stat. § 23.30.175 (2008); Ariz.Rev.Stat. Ann. § 23–1041 (Supp.2009); Colo. Rev.Stat. Ann. § 8–42–107 (West 2003); Conn. Gen.Stat. § 31–309 (2005); Fla. Stat. Ann. § 440.12 (West 2009); Iowa Code Ann. § 85.34 (West 2009); Ky.Rev.Stat. Ann. § 342.143 (LexisNexis 2005); La.Rev. Stat. Ann. § 23:1202 (2005); Mass. Ann. Laws ch. 152, § 1(10) (Lexis-Nexis 2000); Mich. Comp. Laws Ann. § 418.371 (West 1999); Mo. Ann. Stat. § 287.190.5 (West 2005); Mont.Code Ann. § 39–71–703(6) (2009); Nev.Rev.Stat. Ann. § 616C.425 (LexisNexis 2006); N.Y. Workers' Comp. Law § 15 (Consol.1982); Ohio Rev.Code Ann. § 4123.62 (Lexis-Nexis 2007); Okla. Stat. Ann. tit. 85, § 22 (West 2006); S.C.Code Ann. § 42–9–20 (1985); S.D. Codified Laws § 62–4–3.1 (2009); Tex.Rev.Civ. Stat. Ann. art. Workers' Comp. Law § 408.061(g) (Vernon 2006); Utah Code Ann. § 34A–2–409, 2–412 (2005); Vt. Stat. Ann. tit. 21 § 650(d) (2009); Va.Code Ann. § 65.2–500 (2007); W. Va.Code Ann. § 23–4–6 (LexisNexis 2005); Wyo. Stat. Ann. § 27–14–403 (2009).

of the fact that "Workers' [C]ompensation insurance premiums are based on actual payroll figures, which means that underwriting is based on actual numbers rather than on speculation, although the numbers might not be available until the policy-end audit." Richard P. Gilbert, *Maryland Workers' Compensation Handbook* § 9.06 (3rd ed.2007) (citations omitted).

Because of the Commission's long-standing and consistent practice, which we find to be "particularly persuasive," which has been approved by "reported" opinions of the Court of Special Appeals, and which has not been modified by the General Assembly, we hold that any change to the method of calculating PPD benefits should be made by the General Assembly rather than by this Court.

**JUDGMENT AFFIRMED; PETITIONER TO PAY THE COSTS.**