666 A.2d 895

**MAYOR AND CITY COUNCIL OF BALTIMORE**

v.

**Leonard E. POLOMSKI.**

No. 2023, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Nov. 2, 1995.

David B. Allen, Solicitor and Herbert Burgunder, Jr., Senior Solicitor (Otho M. Thompson, Deputy City Solicitor, on the brief), Baltimore, for Appellant.

David E.C. Grant (John E. Kelly, on the brief), Bel Air, for Appellee.

Argued before MURPHY and SALMON, JJ., and JAMES S. GETTY, Associate Judge of Court of Appeals (retired), Specially Assigned.

JAMES S. GETTY, Judge, Specially Assigned.

The issue raised by this appeal is whether workers' compensation benefits are subject to reduction under the offset provisions set forth in Md.Code Ann., Labor and Employment Art., sec. 9–503(d)(2) (1991), where a disabled worker is also entitled to receive a time-earned service retirement.

## Background

Leonard E. Polomski, the 63–year–old appellee, was employed as a firefighter by the Mayor and City council of Baltimore, the appellant herein, for thirty-eight years. Disabled by reason of an occupational disease, appellee applied for a time-earned service retirement on September 4, 1992, which became effective March 3, 1993. On or about October 1, 1992, appellee filed for workers' compensation benefits

based upon uncontested evidence that he was suffering from heart disease, hypertension, and lung impairment.[1]

The Workers' Compensation Commission, in its Order and Award dated July 21, 1994, concluded that appellee was permanently and totally disabled and awarded compensation at the rate of $451.00 per week. The Commission refused to consider any adjustment of the benefits under § 9–503(d)(2).

Appellant filed a Petition for Judicial Review on the sole issue of the Commission's failure to reduce the benefits in accordance with the statute. Appellee's service retirement of $564.35 per week, when combined with his $451.00 compensation award produces a weekly income of $1,015.35. Appellee's weekly wage prior to his retirement amounted to $676.32. His weekly benefits, therefore, exceed his weekly wage by $339.03. Applying sec. 9–503(d)(2), appellee's compensation benefit would be reduced to $111.97. His total weekly benefits would then equal his weekly salary before retirement. The Circuit Court for Baltimore City, for reasons that we shall address hereinafter, granted appellee's motion for summary judgment. This appeal followed.

## The Statutory Law

Labor and Employment Article, sec. 9–503, as enacted in 1991, is new language derived without substantive change from former Art. 101, sec. 64A. (See Revisor's Note.) In pertinent part, LE 9–503(d) provides:

(1) Except as provided in paragraph (2) of this subtitle, any paid firefighter ... who is eligible for benefits under subsection (a), (b), or (c) of this section shall receive the benefits in addition to any benefits that the individual is

---

1. Under Labor and Employment Article, § 9–503(a), a fire-fighter is presumed to have an occupational disease suffered in the line of duty if he has heart disease, hypertension, or lung disease. Appellee, unfortunately, has all three. LE 9–503 was adopted, effective October 1, 1991, as part of the recodification of former Article 101 of the Labor and Employment Article. Appellee's date of disablement was September 4, 1992. His claim, therefore, is covered by LE 9–503.

entitled to receive under the retirement system in which the individual was a participant at the time of the claim.

(2) The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the firefighter.

The trial court concluded that LE 9–503 must be considered together with LE 9–610 when "applying or interpreting either statute." In pertinent part, LE 9–610 states:

(a) Covered Employee of a Governmental Unit or Quasi Public Corporation.—(1) If a statute, charge, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under 9–201(2) of this title ... payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the subsequent injury fund for payment of benefits under this title.

(b) If a benefit paid under paragraph (1) of this subsection is less than the benefits provided under this title, the employer, the Subsequent Injury Fund, or both shall provide an additional benefit that equals the difference between the benefit paid under paragraph (1) of this subsection and the benefits provided under this title.[2]

## Trial Court's Decision

The trial court, as we noted earlier, stated that LE 9–503 and LE 9–610 must be read together in applying or interpreting either statute. The court concluded that the Legislature, in revising Art. 101 and creating LE 9–610, intended no substantive change from former Art. 101, sec. 33. The court then concluded that since former sec. 33 required a reduction or setoff only where "similar benefits" were involved, the

---

2. LE 9–610, effective October 1, 1991, replaced former Art. 101, sec. 33 of the Md.Code.

setoff provision of LE 9–610 did not apply, because appellee's retirement was based upon years of service, which is dissimilar to his claim for benefits due to an occupational disease.

Former Art. 101, sec. 33(c) contained the following offset provision:

> Whenever by statute, charge, ordinance, resolution or policy adopted thereunder, whether as part of a pension system or otherwise, any benefits are furnished employees of employers covered under sec. 21(a)(2) of this article, the dependents ... entitled to benefits under this article as a result of the death of such employees, the benefits ... when furnished by the employer shall satisfy and discharge *pro tanto,* or in full as the case may be, the liability or obligation of the employer and the Subsequent Injury Fund for any benefit under this article. If any benefits so furnished are less than those provided in this article, the employer or the Subsequent Injury Fund, or both shall furnish the additional benefit as will make up the difference between the benefit furnished and the *similar* benefit required in this article.

(Emphasis supplied.)

When Art. 33 was recodified as LE 9–610, effective October 1, 1991, however, the "similar" benefit language was omitted. The trial court noted the omission, but concluded that the Legislature intended no substantive change in the recodification because the Revisor's Note to LE 9–610 states that the section is "new language derived without substantive change from former Article 101, sec. 33(e), the second and third sentences of (a), the first, second, and except as it provided for retroactive effect, the third sentence of (d)."

The trial court then cited the case law supporting the similar-dissimilar benefit test applied in cases involving dual benefit eligibility. Those cases include *Harris v. City of Baltimore,* 306 Md. 669, 511 A.2d 52 (1986), and *Newman v. Subsequent Injury Fund,* 311 Md. 721, 537 A.2d 274 (1988). Both decisions, we point out, preceded the recodification of Art. 101, sec. 33 and of Art. 101, sec. 64A.

*Harris, supra,* was decided under former Art. 101, sec. 64A(b), which is the predecessor of LE 9–503. The recodification is without substantive change, and the Court of Appeals, in *Harris,* found the statute to be unambiguous. Three firefighters suffered an occupational disease and each was awarded permanent total disability compensation under the statutory presumption of compensability. Each fireman was also entitled to receive retirement allowances under the Fire and Police Employees Retirement System of Baltimore City.

Subsection (b) of sec. 64A required that the benefits received by a covered claimant under the Workers' Compensation laws "shall be adjusted so that the total of all weekly benefits shall not exceed one hundred percent of the weekly salary which was paid to said firefighter or police officer."

The Commission applied the adjustment set forth in the statute. The Circuit Court for Baltimore City, the Court of Special Appeals and the Court of Appeals affirmed. The opinion, authored by Judge Couch for the Court of Appeals, states:

> "By its enactment of sec. 64A, the legislature has expressed its continued interest in providing wage loss protection for the covered employees but, at the same time, recognized that an employee who sustains compensable injuries under the Workmens' Compensation laws experiences but one wage loss."

Newman was an employee of Prince George's County who was injured in the course of her employment. The case arose under Art. 101, sec. 33(c) rather than Art. 101, sec. 64A, because the claimant was neither a firefighter nor a police officer engaged in extra hazardous employment, but an employee of Prince George's County.

The claimant was awarded permanent partial disability benefits and returned to her job. Several months later she elected to retire and became eligible for benefits under the county pension plan. Nearly eighteen months later, the county stopped the payments ordered by the Commission on the

ground that the retirement benefits were an offset against the disability award.

On appeal, the Court (Orth, J.) held that under the express wording of sec. 33(c) only "similar" benefits operated to permit the setoff and a disability benefit is neither similar nor comparable to a service earned benefit.[3]

### Discussion

The primary source in ascertaining legislative intent is the language of the statute itself. The language must be given its natural and ordinary signification, bearing in mind the statutory aim and objective. *Newman, supra,* at 723, 537 A.2d 274, citing *Boulden v. Mayor and Commissioners of the Town of Elkton,* 311 Md. 411, 413, 535 A.2d 477 (1988). A plainly worded statute, furthermore, must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation. *See State v. Berry,* 287 Md. 491, 495, 413 A.2d 557 (1980), *cited in Harris, supra,* at 673, 511 A.2d 52.

The Trial court's conclusion that LE 9–503 must be read in conjunction with LE 9–610 is flawed for several reasons. Initially, LE 9–503(d) is the benefits section for occupational diseases compensable under LE 9–503(a), (b), and (c). Application of the entire section is limited to certain designated public officials, including firefighters and police officers, who suffer from specifically designated occupational diseases that are presumptively incurred as a result of the extra-hazardous work in which firefighters and police officers are engaged. Section LE 9–610 relates to employees of a governmental or quasi-public corporation with an offset provision that limits

---

**3.** Other cases construing Art. 101, sec. 33(c), include *Frank v. Baltimore County,* 284 Md. 655, 399 A.2d 250 (1979), proper to offset disability pension benefits against worker's compensation benefits; *Feissner v. Prince George's Co.,* 282 Md. 413, 384 A.2d 742 (1978), offset proper when county pension benefits and worker's compensation benefits are involved; *Mazor v. State Dep't of Correction,* 279 Md. 355, 369 A.2d 82 (1977), offset as to a State accidental disability pension and benefits under the workmen's compensation laws.

governmental liability to the greater of the retirement benefits furnished or the benefits available under this title.

We perceive no reason to construe the two statutes together where the two cover different subject matter and where the statute specifically addressing benefit adjustments of firemen and police officers eligible for retirement and workers' compensation benefits is clear and unambiguous.

The trial court's conclusion that no change was intended in the recodification of Art. 101, sec. 33(c), completely ignores the plain meaning of LE 9–503 requiring an adjustment so that "the weekly total of those [compensation] benefits and retirement benefits does not exceed the weekly salary that was paid to the firefighter, fire fighting instructor, or police officer." As we stated earlier, neither Art. 101, sec. 64A nor LE 9–503 ever contained the words "similar benefit," which first appeared in Art. 101, sec. 33(a) in chapter 785 of the Laws of 1971, effective May 28, 1971. The effect of deciding that *Newman, supra,* is dispositive of the present case requires a judicial amendment of LE 9–503(d) inserting the word "disability" before "retirement benefits" and re-inserting the phrase "similar benefits" in LE 9–610. If the interpretation and application of a setoff in LE 9–610 is to be applied to LE 9–503 cases involving firefighters and police officers, it ought to occur by legislative enactment, not by judicial fiat.

■ The Legislature is presumed to have full knowledge and information about existing laws, including decisions by the Court of Appeals. This acknowledgment does not permit a court to omit or insert words to make a statute express an intention not evidenced in its original form. *Bd. of Education of Garrett County v. Lendo,* 295 Md. 55, 62–66, 453 A.2d 1185 (1982); *Supervisor of Assessments of Anne Arundel County v. Southgate Harbor,* 279 Md. 586, 591–92, 369 A.2d 1053 (1977).

■ Another reason for rejecting appellees' argument is that it flies in the face of the principle precluding two recoveries for a single injury. Whether construing either statue, 9–503 or 9–610, the unmistakable intent of the Legislature since 1914 has been to provide only a single recovery for govern-

mental employees covered by both a pension plan and workers' compensation. *Frank v. Baltimore County,* 284 Md. 655, 399 A.2d 250 (1979).

The Legislature clearly singled out those government employees engaged in extra-hazardous work for special consideration in cases involving specified occupational diseases. That consideration is the presumption that certain diseases, when incurred, arose in the course of the employment. At the same time, the Legislature retained the setoff provisions in the statute in order that wage losses would not become a burden on the public treasury where eligibility for additional benefits, payable by the same employer, from the same public funds, exists. The present scheme protects both the government employee whose weekly wage is maintained, and the public treasury that is not required to pay duplicate benefits for a single wage loss. From the standpoint of protecting the public treasury from dual claims, it matters not whether the retirement benefits are based upon disability or time served.

We decline to address whether the elimination of the "similar benefit" language from LE 9–610 will affect the holding in *Newman, supra.* That issue is not before us. We hold, however, that the trial court erred in deciding this case under 9–610; 9–503 is clear, and it negated any need to look elsewhere.

JUDGMENT REVERSED. REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR RETURN TO THE WORKERS' COMPENSATION COMMISSION FOR FURTHER ACTION CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.