707 A.2d 108

Mary E. WILLS

v.

BALTIMORE COUNTY, Maryland, et al.

Jerry BLEVINS

v.

BALTIMORE COUNTY, Maryland.

Nos. 579, 668, Sept. Term, 1997.

Court of Special Appeals of Maryland.

March 19, 1998.

282

Hal C.B. Clagett, III, Upper Marlboro (Patricia G. Adams and Serio, Tansey & Adams, Riverdale, on the brief), for appellant Wills.

Steven D. Shemenski (James R. Farmer and Turnbull, Mix & Farmer, on the brief), Towson, for appellant Blevins.

Michael G. Comeau, Asst. County Atty. (Virginia W. Barnhart, County Atty., on the brief), Towson, for appellees.

Argued before DAVIS, SONNER and BYRNES, JJ.

BYRNES, Judge.

These two cases, which we have consolidated for disposition, call upon us to construe Maryland Code (1991 Repl.Vol., 1997 Supp.), § 9–610(a) of the Labor and Employment Article ("L.E."), which is known as the "governmental employee offset provision" of the Maryland Workers' Compensation Act (hereinafter "the Act.")[1] In Case No. 579 (September 1997 Term), the Circuit Court for Baltimore County (Cadigan, J.) granted summary judgment in favor of appellee Baltimore County ("County"), ruling that workers' compensation disability benefits awarded to appellant Mary E. Wills were offset by her length of service retirement benefits, even though her receipt of retirement benefits was unrelated to the injury for which she was awarded workers' compensation. In Case No. 668 (September 1997 Term), the Circuit Court for Baltimore County (DeWaters, J.) granted summary judgment in favor of appellee Baltimore County, ruling that workers' compensation benefits awarded to appellant Jerry L. Blevins for a time period before his retirement were offset by disability retirement benefits that he received from Baltimore County after his retirement.

As neither case presents a genuine dispute of material fact and the granting of summary judgment in each case was legally correct, we shall affirm the judgments in both cases.

## FACTS

### Wills v. Baltimore County

On March 26, 1992, Mary E. Wills, a clerical worker employed by Baltimore County in its Office of Aging, fell off her chair at work and sustained an injury to her back. Wills was hospitalized and subsequently treated by an orthopedist and a physical therapist. At the time of her injury, Wills was 70 years old and had been employed by the County for 30 years.

---

1. Unless otherwise indicated, all statutory references in this opinion are to the Maryland Workers' Compensation Act, §§ 9–101 through 9–1201 of the Labor and Employment Article ("L.E.").

She was earning $492.08 per week. Wills's back injury prevented her from returning to her job.

Wills filed a claim for benefits with the Workers' Compensation Commission ("commission") and on August 31, 1992, the commission awarded her temporary total disability benefits of $300.00 per week. The County paid Wills her full salary in lieu of that award. Approximately six months later, on February 8, 1993, Wills retired. Effective February 11, 1993, Wills began receiving a service-related retirement benefit of $300.23 per week from Baltimore County.

On March 4, 1994, the commission held a hearing in Wills's case on issues of accidental injury, causation, and pre-existing disability. Wills testified that she was receiving a retirement benefit from the County. The County did not then seek to offset the retirement benefits against the workers' compensation award, under L.E. § 9–610(a). The commission passed an order on March 17, 1994 attributing 75% of Wills's injury to her accident and the remaining 25% to a pre-existing condition. It further directed the County to pay Wills permanent total disability benefits of $329.00 per week, beginning as of January 1, 1993, for 500 weeks, not to exceed the sum of $164,500.00 allowable under "other cases," with continuing benefits to be assumed by the Subsequent Injury Fund ("the Fund").

Baltimore County and the Fund filed a petition for judicial review of the commission's decision in the Circuit Court for Baltimore County. They did not raise the issue of an offset under L.E. § 9–610(a). On November 9, 1995, the circuit court affirmed the commission's award.

In January, 1996, the County filed issues with the commission, requesting that it offset Wills's workers' compensation benefits by the amount of her retirement benefits. The commission held a hearing on the County's request on May 20, 1996. On June 7, 1996, it issued an order denying the request. The County and the Fund filed a petition for judicial review in the Circuit Court for Baltimore County. Motions for summary judgment were filed by all parties. The court held a

hearing and, on April 1, 1997, it granted the motions for summary judgment of the County and the Fund, reversing the commission's decision and granting the County's request for an offset.

Wills noted this appeal, presenting the following questions for review, which we have rephrased:

I. Was the commission's June 7, 1996 decision appealable?

II. Did the trial court err in reversing the commission's ruling that the County was barred from seeking an offset under L.E. § 9–601 because an offset must be sought at the time of the initial award?

III. Did the trial court err in ruling that, given the elimination of the word "similar" from the governmental employee offset provision of the Act, benefits that are not "similar" are now offset against workers' compensation benefits under L.E. § 9–610(a)?

### Blevins v. Baltimore County

Jerry L. Blevins worked full-time for the Baltimore County Police Department for 28 years. In 1994, he was a Deputy Police Chief, earning a yearly salary of $77,000.00. On January 21, 1994, Blevins was going about his police duties when he slipped and fell on a patch of ice in the parking lot of the Baltimore County Police Headquarters. Blevins sustained injuries to his neck, back, and shoulder. He was treated by an orthopedist, a physical therapist, and a pain management specialist.

Blevins did not miss any time from work on account of his accident. Nevertheless, he filed for accidental disability retirement benefits with the Employees' Retirement System of Baltimore County. His application was approved and, on November 16, 1995, Blevins retired. From that time forward, Blevins has received disability retirement benefits of $1,038.25 per week ($53,989.00 per year).

After he retired, Blevins filed a petition for permanent partial disability benefits before the Workers' Compensation

Commission. On February 9, 1996, the commission held a hearing on Blevins's claim and, on February 23, 1996, it awarded Blevins permanent partial disability benefits under the "other cases" category, for a 20% loss of industrial use of his body. The award directed that Blevins be paid benefits of $170.00 per week for the period from January 22, 1994 (the day after his accident) until November 16, 1995 (his retirement date). It specified that any permanent partial disability payments attributable to a period after Blevins's retirement were offset by his pension benefits.

On March 4, 1996, Baltimore County filed a petition for judicial review of the commission's decision in the Circuit Court for Baltimore County. It then filed a motion for summary judgment, which Blevins opposed. The circuit court held a hearing and on March 5, 1997, it granted the motion for summary judgment, reversing the commission's award. Blevins noted this appeal, presenting two questions for review, which we have combined and reworded as follows:

I. Did the lower court err in reversing the commission's ruling that L.E. § 9–610(a) did not entitle Baltimore County to offset his retirement disability benefits against workers' compensation benefits awarded for a period before his retirement?

## DISCUSSION

### I

#### *Standard of Review*

Our task in reviewing a trial court's granting of a summary judgment is two-pronged. First, we determine whether there was a dispute of material fact that rendered summary judgment improper. Then, if there is no such dispute, we must determine whether the trial court's ruling that the prevailing party was entitled to judgment as a matter of law was legally correct. *Lynx, Inc. v. Ordnance Prods., Inc.,* 273 Md. 1, 8, 327 A.2d 502 (1974); *McKinney Drilling Co. v. Mach I Ltd. Partnership,* 32 Md.App. 205, 209, 359 A.2d 100 (1976). In

these cases, we need only perform the second prong of our task, as the parties agree that there are no disputes of material fact.

■ In addition, in reviewing the ruling of the Workers' Compensation Commission:

[w]e, as was the circuit court, are to be guided by the general statutory command that "the decision[s] of the Commission [are] entitled to prima facie correctness." A court, therefore, may reverse a commission ruling only upon a finding that its action was based upon an erroneous construction of the law or facts ...

*Frank v. Baltimore County*, 284 Md. 655, 658, 399 A.2d 250 (1979)(quoting *Md. Bureau of Mines v. Powers*, 258 Md. 379, 382, 265 A.2d 860 (1970)).

## II

### *The Governmental Employee Offset Provision of the Act*

By Chapter 8, § 2 of the Acts of 1991, section 33(d) of Article 101 of the Maryland Code, which set forth the "governmental employee offset" provision of the Act, was recodified at § 9–610(a) of the Labor and Employment Article. Former Art. 101, § 33(d) provided, in pertinent part:

Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, any benefit or benefits are furnished employees of [public] employers ... the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full ..., the liability or obligation of the employer and the Subsequent Injury Fund for any benefit under this article. If any benefits so furnished are less than those provided for in this article the employer or the Subsequent Injury Fund, or both shall furnish the additional benefit as will make up the difference between the benefit furnished and the similar benefit required in this article ...

Md.Code (1957, 1985 Repl.Vol., 1990 Cum.Supp.), Art. 101, § 33. L.E. § 9–610(a), entitled "Offset against other benefits," now reads, in relevant part:

(a) *Covered employee of governmental unit or quasi-public corporation.*—

(1) If a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit ... that is subject to this title under § 9–201(2) of this title ... payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of benefits under this title.

(2) If a benefit paid under paragraph (1) of this subsection is less than the benefits provided under this title, the employer, the Subsequent Injury Fund, or both shall provide an additional benefit that equals the difference between the benefit paid under paragraph (1) of this subsection and the benefits provided under this title.

In the cases *sub judice,* it is undisputed that L.E. § 9–610(a) was in effect at the time of the workers' injuries, *see Baltimore County v. Fleming,* 113 Md.App. 254, 255–56, 686 A.2d 1161 (1996), and that when they were injured, Wills and Blevins were covered employees of a governmental unit, within. the meaning of L.E. § 9–610(a). To resolve the issues presented in each case, we must interpret the meaning of the governmental employee offset provision in its present form. In doing so, we are guided by well-established principles of statutory construction.

■■■■ "The cardinal rule of statutory construction is to ascertain and carry out the intent of the legislature." *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448 (1994); *Stapleford v. Hyatt,* 330 Md. 388, 400, 624 A.2d 526 (1993); *Taxiera v. Malkus,* 320 Md. 471, 480, 578 A.2d 761 (1990); *Jones v. State,* 311 Md. 398, 405, 535 A.2d 471 (1988). In determining legislative intent of a statute, " '[t]he primary source ... is, of course, the language of the statute itself.' "

*State v. Pagano,* 341 Md. 129, 133, 669 A.2d 1339 (1996)(quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73, 517 A.2d 730 (1986)).

> If [the language of a statute] is clear and unambiguous, then we need look no further. In such a case, a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation. Doing so merely provides the clearest indication of the legislative intent and is thus the primary source for all statutory construction.

*Harris v. City of Baltimore,* 306 Md. 669, 673, 511 A.2d 52 (1986) (citations omitted). The language of a statute is to be given its natural and ordinary meaning. *Buckman,* 333 Md. at 523, 636 A.2d 448; *Harford County v. University of Md. Medical Sys. Corp.,* 318 Md. 525, 529, 569 A.2d 649 (1990). Although in some circumstances we need only look at the "statutory language to determine the legislative purpose," we "may always consider evidence of legislative intent beyond the plain language of the statute." *Pagano,* 341 Md. at 133, 669 A.2d 1339. In construing a statute, the Court "seek[s] to avoid results which are 'illogical,' 'unreasonable,' or 'inconsistent with common sense.'" *Romm v. Flax,* 340 Md. 690, 693, 668 A.2d 1 (1995)(quoting *Tucker,* 308 Md. at 75, 517 A.2d 730).

### III

### *Wills:* Preliminary Issues

### (i)

### Appealability

■ Wills argues that the commission's June 7, 1996 order denying the County's request for an offset under L.E. § 9–610(a) constituted a refusal by the commission to reopen a claim under L.E. § 9–736(c), which is not an appealable order, except in limited circumstances that do not apply here. The County counters that the commission did not refuse to reopen the claim. Rather, it exercised its continuing jurisdiction and

issued a substantive ruling on the issue presented, rejecting the offset request. As such, the commission's order was appealable. We agree with the County.[2]

L.E. § 9-610(c)(2) provides that "[a] claim that comes under this section is subject to the continuing powers and jurisdiction of the commission." Those powers are enumerated in L.E. § 9-736, entitled "Readjustment; continuing powers and jurisdiction; modification," which provides, in relevant part:

(b) *Continuing powers and jurisdiction; modification.—*

(1) The Commission has continuing powers and jurisdiction over each claim under this title.

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the last compensation payment.

Wills asserts that the holding of the Court of Appeals in *Robin Express, Inc. v. Cuccaro,* 247 Md. 262, 230 A.2d 671 (1967), and the holding of this Court in *Roadway Express, Inc. v. Gray,* 40 Md.App. 66, 389 A.2d 407 (1978), support her contention that the June 7, 1996 commission order was not appealable. In *Robin Express,* the commission issued an award of benefits to an injured employee after the employer did not respond to the claim or participate in the hearing. Thereafter, the employer filed a motion for rehearing, asking the commission to reopen the claim so it could present evidence demonstrating that it was not the injured workers' employer. The commission denied the motion and the employer sought judicial review in the circuit court. The circuit court dismissed the employer's claim, ruling that the right to

---

**2.** We note that the question whether the commission's June 7, 1996 order is appealable was not raised before the circuit court. As the issue concerns a matter of jurisdiction, we will review it nevertheless. Md. Rule 8-131; *Thompson v. State,* 38 Md.App. 499, 501, 381 A.2d 704 (1978).

appeal from the commission's refusal to grant a rehearing is limited to situations involving aggravation, termination, or diminution of injury, under § 40(b) of former Article 101. The Court of Appeals affirmed. *See also Gold Dust Corp. v. Zabawa,* 159 Md. 664, 666–69, 152 A. 500 (1930).

Like the employer in *Robin Express,* the employer in *Roadway Express, supra,* failed to take action to respond to an injured worker's claim. The commission passed an order awarding temporary total disability benefits, which was forwarded to the employer. The employer did not take steps to obtain judicial review. Instead, it filed a motion to rescind or modify the commission's order, asserting that the worker had failed to report the accident as required, had failed to file the claim report and medical records, and that there was not sufficient evidence before the commission on which to base its award. The commission affirmed its original award and the employer then petitioned for judicial review.

The circuit court in *Roadway Express* dismissed the petition for lack of jurisdiction. We affirmed, holding that the employer's effort to obtain judicial review of the commission's denial of its motion to rescind or modify was a collateral attack on the award, taken after the time to obtain judicial review had expired: "To permit the [employer] to raise these issues in a collateral proceeding would defeat the purpose of requiring appeals to be filed within a mandatory period." *Id.* at 72, 389 A.2d 407.

These cases do not support Wills's argument that the circuit court lacked jurisdiction to review the commission's June 7, 1996 order. In the case *sub judice,* the County contested Wills's claim and participated fully in the hearing on the claim and the appeal from the commission's award of benefits that followed. Subsequently, the County invoked the continuing jurisdiction of the commission over claims for offsets referenced in L.E. § 9–610(c)(2) and filed issues requesting an offset for the first time. The record of the commission hearing reveals that the commissioner gave substantive consideration to the County's offset request. The commissioner

did not refuse to reopen the claim or to exercise the commission's continuing powers and jurisdiction under L.E. § 9–610(c)(2). To the contrary, the commissioner remarked that he understood that the issues were filed by the County pursuant to that statutory provision. The commissioner entertained the County's request for an offset but denied it on the ground that L.E. § 9–610(a)(3) bars entitlement to an offset after the "initial award."

In *Robin Express,* the Court compared an appeal from the commission's refusal to reopen a claim to consider an issue, which is not permitted, to an appeal from a decision made by the commission once it has reopened the claim for purposes of deciding the issue, which is permitted. Observing that a decision refusing to reopen a claim is "only a decision not to interfere with a previous decision settling the merits of the claim" which, if appealable, would lead to interminable litigation, *Robin Express,* 247 Md. at 264, 230 A.2d 671 (quoting *Gold Dust,* 159 Md. at 666, 152 A. 500), the Court remarked:

If a court or administrative body reopens a case its second decision, be it the same or different from its previous decision, is a new holding; if it refuses to reopen, it decides only not to interfere with its previous decision which stands unimpeached as of its original date.

*Id.* at 265, 230 A.2d 671.

Here, the commission exercised its continuing jurisdiction, considered the County's request for an offset, and ruled that the County was barred from obtaining an offset. It did not refuse to consider the offset issue or simply decide not to interfere with its original award settling the merits of the claim. As such, the commission's order was an appealable "new holding."

### (ii)

### Timing of Offset Request

Wills next argues that the language of L.E. § 9–610(a)(3) requiring computation of an "additional benefit . . . at the time of the initial award" barred the County from filing issues with

the commission requesting an offset under L.E. § 9–610(a), after the commission had issued its March 17, 1994 award. The commissioner agreed with Wills on this point, interpreting L.E. § 9–610(a)(3) to mandate that any governmental employee offset be assessed at the time of the initial workers' compensation award and precluding a governmental employer from obtaining an offset any time thereafter. The circuit court took a contrary view, construing L.E. § 9–610(a)(3) so as not to bar the County's request for an offset. We agree with the circuit court's statutory interpretation.

L.E. § 9–610(a)(3) pertains to the "additional benefit" referenced in L.E. § 9–610(a)(2) and must be analyzed in light of that related subsection. If the workers' compensation benefits awarded to a governmental employee exceed the retirement, pension, or other "benefit" that the governmental employer is seeking to apply as an offset, L.E. § 9–610(a)(2) applies and provides that "an additional benefit that equals the difference between" the two benefits shall be paid to the employee by the employer or the Fund or both. Under L.E. § 9–610(c)(1)(ii), the commission is empowered to "make an award against the employer or the [Fund] or both to provide [the] additional benefit . . ." L.E. § 9–610(a)(3) specifies:

The computation of an additional benefit payable under paragraph (2) of this section shall be done at the time of the initial award and may not include any cost of living adjustment after the initial award.

■ The language recited above is part of a statutory scheme and, as such, should not be construed in isolation. *Fraternal Order of Police, Montgomery County Lodge No. 35 v. Mehrling*, 343 Md. 155, 180, 680 A.2d 1052 (1996). Subsection (a)(1) establishes generally the right to an offset. That subsection does not contain a time limitation for seeking an offset or any reference to time at all. Subsection (a)(3), which Wills argues bars offset requests made after the "initial award," does not apply to all requests for offsets or to the general right to request an offset. To the contrary, it is a narrowly drawn provision applicable only to those cases in

which there is less than a complete offset. Its subject matter is the computation of the additional benefit. Read in context, it prescribes the method for computing an "additional benefit" to which a governmental employee may be entitled by targeting the time-frame relevant to the computation.

An interpretation of the time reference in subsection (a)(3) to create a general limitations period applicable to all offset claims when that subsection is only triggered in the subset of offset claims that involve computation of an additional benefit ignores the limited function of that provision in the statutory scheme. In the absence of a judicially crafted exception, such an interpretation would prevent a governmental employer from seeking an offset after an initial award of workers' compensation benefits even when the other benefit had not been in existence at the time of the initial award. Likewise, it would prejudice the rights of the Fund in those cases in which it is impleaded after the initial award. Indeed, it would render the clause in subsection (a)(3) prohibiting inclusion of cost of living adjustments in the calculation of an "additional benefit" meaningless in all but those cases in which the other benefit post-dated the award (and in which the offset request would be barred in any event.). L.E. § 9–638 provides, *inter alia*, that workers' compensation paid as permanent total disability "is subject to an annual cost of living adjustment." If an offset request cannot be sought after the initial award, the "additional benefit" will be calculated before cost of living adjustments come into play anyway, making the prohibition in (a)(3) purposeless. We will not read any part of a statute to be superfluous. *Polomski v. Mayor & City Council of Baltimore,* 344 Md. 70, 83, 684 A.2d 1338 (1996); *Schlossberg v. Citizens Bank of Maryland,* 341 Md. 650, 660, 672 A.2d 625 (1996).

Finally, we note that the continuing powers clause of L.E. § 9–736(b) provides at subsection (3) that an application for modification of an award by the commission must be made "within 5 years after the last compensation payment" and that, under L.E. § 9–610(c), that express time limitation applies to a "claim" for an offset. Wills's interpretation of subsection

(a)(3) of the offset statute would make that statute internally inconsistent with respect to the time for asserting an offset claim.

## III

### *Wills:* Status of *Newman v. Subsequent Injury Fund* in light of 1991 Recodification of Workers' Compensation Act

In *Newman v. Subsequent Injury Fund,* 311 Md. 721, 537 A.2d 274 (1988), the Court of Appeals held that a workers' compensation award to a governmental employee could not be offset by the employee's length of service retirement benefits. In that case, an employee of Prince George's County was awarded workers' compensation benefits for a work-related injury. She returned to work and, several months later, elected to take retirement, for which her age and years of service made her eligible. Prince George's County sought to offset her retirement benefit against her workers' compensation award, under former Art. 101, § 33(d).[3]

The Court of Appeals held that Prince George's County was not entitled to an offset. It reasoned that the use of the phrase "similar benefit" in former Art. 101, § 33(d) limited application of the governmental employee offset to benefits that are similar or comparable to workers' compensation benefits and that a retirement benefit based on age and length of service is not such a benefit. The Court explained:

Newman was awarded workers' compensation because of the impairment of the industrial use of her body as a result of her work-related injury. On the other hand, it appears that she was entitled to the benefits under the retirement plan merely because she had elected to retire after attaining a prescribed age and 20 years service with the county. The

---

**3.** When *Newman* was decided, the governmental employee offset provision appeared at Art. 101, § 33(c) of the Code. In 1989, the General Assembly amended § 33 and renumbered its sections. Effective July 1, 1989, the offset provision became § 33(d).

payment of these benefits had no relation whatsoever to her injury and the disability resulting therefrom. Age and length of service were not a prerequisite for her entitlement to [workers'] compensation benefits; anatomical disability was not a prerequisite for her entitlement to the retirement benefits.... The two benefits were not similar and not comparable. Therefore, the offset provisions of § 33[ (d) ] were not applicable.

311 Md. at 724, 537 A.2d 274. *See also Oros v. City of Baltimore,* 56 Md.App. 685, 468 A.2d 693 (1983), *aff'd on other grounds,* 301 Md. 460, 483 A.2d 748 (1984).

The Court in *Newman* distinguished the cases permitting offsets by retirement benefits on the ground that they involved disability retirement benefits that were conferred because the worker had sustained an injury and not because of the worker's age and length of service. *See Frank v. Baltimore County, supra* (disability pension benefits); *Feissner v. Prince George's County,* 282 Md. 413, 384 A.2d 742 (1978)(disability retirement pay); *Mazor v. State, Department of Correction,* 279 Md. 355, 369 A.2d 82 (1977)(accidental disability pensions).

In *Polomski v. Mayor & City Council of Baltimore, supra,* the Court succinctly summarized the interpretation of former Art. 101, § 33(d) announced in *Newman:* "[S]imilar benefits for the same injury trigger the offset provision ... Dissimilar benefits, therefore, render the offset provision inapplicable." *Id.* at 81, 684 A.2d 1338. The "similar benefit" phrase on which the holding in *Newman* rests appeared once in former Art. 101, § 33(d). It was not contained in the sentence of § 33(d) establishing the offset generally. Rather, it was included in a later sentence in the subsection pertaining to calculation of additional benefits (the statutory predecessor to L.E. § 9–610(a)(3)).

The word "similar" was not included in the governmental employee offset provision as first enacted in Md.Code (1939), Art. 101, § 46. That offset provision stated simply that municipal employees were excluded from workers' compensa-

tion coverage if the municipality made "equal or better" provision for its employees. The word "similar" was first introduced into the governmental employee offset statute when five sections of former Art. 101 were repealed and re-enacted by Chapter 741, 1970 Laws of Maryland. No history accompanies that legislation. One year later, the Legislature again repealed and re-enacted Art. 101, § 33. 1971 Md. Laws 785. The 1971 legislation contains a purpose clause explaining that the offset provision was meant to:

> provide that whenever benefits are furnished by an employer, as defined, equal to or better than the benefits provided under Article 101 of the Ann.Code of Md., such defined employer shall be released of any obligation thereunder, but should such benefits be less than those required by the said Article 101, such defined employer shall make up the difference.

*Id.* The purpose clause does not mention the "similar benefit" phrase or explain its purpose.

When former Art. 101, § 33(d) was recodified at L.E. § 9–610(a)(1)–(2) in 1991, the word "similar" was not included in the statute as revised. Neither House Bill 1 (1991) nor the Report on that bill mentions the "similar benefit" language of former Art. 101, § 33(d) or its absence from the revised statutory language. In the case *sub judice,* the County argued and the circuit court agreed that the elimination of the "similar benefit" phrase from the offset statute in 1991 materially changed the law so that benefits paid to a governmental employee that are not injury or disability related, *i.e.,* are not "similar" to workers' compensation benefits, now are offset against workers' compensation benefits awarded to the employee. That interpretation of L.E. § 9–610(a) entitles the County to offset the service-related retirement benefit that it pays Wills against the workers' compensation benefits that the commission has directed it to pay her, even though the two benefits are not similar.

Wills challenges that statutory interpretation, contending that the omission of the word "similar" from L.E. § 9–610(a)

did not effect a change in the law because it was "only for the purpose of clarity and brevity." In support, she cites the Revisor's Note to L.E. § 9–610, which states that the section "is new language derived without substantive change" from certain portions of former Art. 101, § 33, including the second sentence of subsection (d), in which the "similar benefit" phrase appeared.[4] Wills also maintains that, even though the word "similar" no longer appears in the offset statute, a proper reading of L.E. § 9–610(a)(1) limits those benefits that may be offset to like or similar benefits. Finally, Wills argues that any statutory interpretation that does not limit the governmental employee offset provision to similar benefits is contrary to the underlying purposes of the Act. We disagree with Wills's analysis.

Our starting point in construing the meaning of L.E. § 9–610(a) is the language of the statute itself, as revised through recodification in 1991. Speaking with particular reference to the complete recodification of the Workers' Compensation Act in the 1991 revision of the Maryland Code, the Court of Appeals has observed that, for the most part, recodifications are not substantive in nature:

> This Court consistently has presumed that general recodifications of statutes, such as Title 9 of the Labor & Employment Article, are for the purpose of clarity only and not substantive change, unless the language of the recodified statute unmistakably indicates the intention of the Legislature to modify the law.

---

**4.** The second sentence of Art. 101, § 33(d) read:

"If any benefits so furnished [by a government employer] are less than those provided for in this article the employer or the Subsequent Injury Fund, or both shall furnish the additional benefit as will make up the difference between the benefit furnished and the **similar benefit** required in this article." (emphasis added).

The corresponding provision in L.E. § 9–610(a)(2) reads:

"If a benefit paid [by a government employer] is less than the benefits provided under this title, the employer, the Subsequent Injury Fund, or both shall provide an additional benefit that equals the difference between the benefit paid [by the employer] and the **benefits** provided under this title." (emphasis added).

*DeBusk v. Johns Hopkins,* 342 Md. 432, 444, 677 A.2d 73 (1996), *citing, Duffy v. Conaway,* 295 Md. 242, 257–58, 455 A.2d 955 (1983); *In re Special Investigation No. 236,* 295 Md. 573, 576–77, 458 A.2d 75 (1983); *Bureau of Mines of Maryland v. George's Creek Coal & Land Co.,* 272 Md. 143, 155, 321 A.2d 748 (1974); *Welch v. Humphrey,* 200 Md. 410, 417, 90 A.2d 686 (1952). Put another way, "[a] change in the phraseology of a statute as part of a recodification will ordinarily not be deemed to modify the law unless the change is such that the intention of the Legislature to modify the law is unmistakable." *Office & Prof. Employees Int'l Union v. Mass Transit Admin.,* 295 Md. 88, 100, 453 A.2d 1191 (1982).

■ Revisor's Notes are "a source to which [the courts] regularly turn concerning the intent of the Legislature," *De-Busk,* 342 Md. at 443, 677 A.2d 73, and "are entitled to considerable weight in ascertaining legislative intent." *Office & Prof. Employees Int'l Union,* 295 Md. at 101, 453 A.2d 1191. *See, e.g. Briggs v. State,* 289 Md. 23, 30–31, 421 A.2d 1369 (1980). While the Revisor's Note to L.E. § 9–610 serves as evidence of legislative intent it is not, in and of itself, determinative of legislative intent. It is one factor that we consider in deciding whether the 1991 elimination by recodification of the word "similar" from the governmental employee offset provision "unmistakably indicates the intention of the Legislature to modify the law." *DeBusk,* 342 Md. at 444, 677 A.2d 73.

Also important to our inquiry is the presumption that the Legislature has full knowledge of existing laws, including decisions of the Court of Appeals, when it effects a statutory change. *Mayor & City Council of Baltimore v. Polomski,* 106 Md.App. 689, 697, 666 A.2d 895, *aff'd on other grounds,* 344 Md. 70, 684 A.2d 1338 (1996). *Newman v. Subsequent Injury Fund* had been the law for three years when L.E. § 9–610(a) was enacted. A reading of that case makes plain that inclusion of the words "similar benefit" in former Art. 101, § 33(d) was the lynchpin of the Court's holding.[5] *See Polomski,* 344

---

5. The Court in *Newman* stated: "It is perfectly clear that the word "similar" in the phrase 'the benefit furnished and the similar benefit

Md. at 82, 684 A.2d 1338 ("Our cases construing former Art. 101, § 33(d) relied heavily, if not exclusively, upon the 'similar benefits' language employed in that statute."). While the Court in *Newman* discussed at length the consistency between its interpretation of "similar benefit" and the legislative intent behind the Workers' Compensation Act, the reasoning of the Court depended upon the presence of the word "similar" in the statute.

We presume that the General Assembly was fully aware of *Newman* when it revised the governmental employee offset provision by leaving out the statutory language that was instrumental to the holding in that case. In addition, a comparison of the sentence in former Art. 101, § 33(d), containing the "similar benefit" phrase, to its replacement counterpart in L.E. § 9–610(a)(2) makes plain that the elimination of the word "similar" as a modifier of the word "benefit" (or "benefits") from the latter is a language change that differs qualitatively from all other language changes that were made to that section. Those changes relate strictly to form. The omission of the word "similar" from the present law, however, cannot be explained on the basis of style, grammar, or punctuation. Moreover, the word "similar" not only was eliminated as a modifier of "benefit" in the clause that is the present version of the "similar benefit" clause of former Art. 101, § 33(d), but also was not included in other parts of the section where its use would have been logical if modification of the word "benefit" to retain the meaning ascribed to it in *Newman* had been intended by the Legislature. The importance of the word "similar" to the *Newman* holding and the lack of any explanation based on form alone for its disappearance upon recodification from the current governmental employee

required in this article,' near the end of the section, qualifies the provision at the beginning of the Section as to the benefits furnished employees by employers. Neither as a matter of grammar nor of substance is there a 'reasonable distinguishing purpose to suggest that ['similar'] was not intended to be implicit in the foregoing sentences.' " 311 Md. at 724, 537 A.2d 274 (quoting *Oros v. City of Baltimore,* 56 Md.App. 685, 689, 468 A.2d 693 (1983)(aff'd. on other grounds, *City of Baltimore v. Oros,* 301 Md. 460, 483 A.2d 748 (1984))).

offset provision is compelling evidence that the Legislature took positive action to remove the word from the statute for a substantive purpose, *i.e.*, to modify the law.

 The Legislature's retention of the "similar benefit" phrase in another subsection of L.E. § 9–610 further convinces us that the deletion of the word "similar" from the governmental employee offset provision was a material change intended to modify the law. L.E. § 9–610(b), entitled "Covered employee of Military Department of State," pertains to benefits conferred by federal law upon certain employees of the Military Department of the State. Subsection (2) of L.E. § 9–610(b) provides:

> If federal law provides benefits for a covered employee of the Military Department of the State that are less than the benefits provided by this title, the State . . . shall provide an additional benefit that equals the difference between the benefit provided by federal law and the **similar benefit** provided by this title.

(emphasis supplied). That language was derived from the third sentence of former Art. 101, § 33(a):

> Should any benefits provided by the federal government be less than those provided by this article, the State . . . shall furnish the additional benefit in order to make up the difference between the benefit provided by the federal government and the **similar benefit** provided by this article.

(emphasis supplied). The federal military benefit offset provision in that sentence was a mirror image of the only sentence in the governmental employee offset provision of § 33(d) that contained the "similar benefit" phrase:

> If any benefits so furnished are less than those provided for in this article the employer or the Subsequent Injury Fund, or both shall furnish the additional benefit as will make up the difference between the benefit furnished and the **similar benefit** required in this article.

(emphasis supplied). The Legislature's failure upon recodification to carry over the word "similar" from the predecessor

statute to L.E. § 9–610(a)(1)–(2) when it did carry over the word "similar" from the parallel predecessor statute to L.E. § 9–610(b) is unmistakable evidence that it intended the change in the wording of the governmental employee offset provision to modify the law.

Wills argues that the following sentence in L.E. § 9–610(a)(1) limits the offset to benefits that are awarded on account of injury:

> If a statute ... provides a benefit to a covered employee of a governmental unit ... that is subject to this title under § 9–201(2) of this title ... payment of the benefit by the employer satisfies ... the liability of the employer ..."

Wills contends that the phrase "subject to this title" modifies the word "benefit;" as such, she argues, a retirement benefit "must be the subject of the workers' compensation statute [*i.e.*, relate to an injury, disability of disease to which workers' compensation would apply] for the offset to apply."

 We do not accept Wills's strained construction of the plain language of the offset statute. "As a corollary of the rule that we accord words their ordinary meaning, we must accord sentences an ordinary grammatical structure." *Mazor*, 279 Md. at 363, 369 A.2d 82. Under Wills's reading of L.E. § 9–610(a)(1), the phrase "subject to this title" is incomplete and unconnected to the words that follow it. The full phrase, read correctly, is "subject to this title under § 9–201(2) of this title." L.E. § 9–201, headed "Employers subject to title," provides: "This title applies to the following employers: ... (2) each governmental unit or quasi-public corporation that has at least 1 covered employee." It is thus clear that the phrase on which Wills bases her argument modifies the word "governmental unit," not the word "benefit."

 As presently worded, L.E. § 9–610(a) contains no language qualifying or limiting the nature or type of benefit that may be offset against a governmental employee's workers' compensation benefit. "When ... the 'statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, the courts are not at liberty to insert or

delete words with a view toward making the statute express an intention which is different from its plain meaning.'" *Frank,* 284 Md. at 661, 399 A.2d 250 (quoting *Gatewood v. State,* 244 Md. 609, 617, 224 A.2d 677 (1966)); *Fikar v. Montgomery County,* 333 Md. 430, 434–35, 635 A.2d 977 (1994); *Potter v. Bethesda Fire Dep't,* 309 Md. 347, 353, 524 A.2d 61 (1987); *Jung v. Southland Corp.,* 114 Md.App. 541, 548, 691 A.2d 263 (1997). The Legislature deleted the very word in former Art. 101, § 33(d) that was operative to the *Newman* holding. Irrespective of the comment in the Revisor's Note, we are not at liberty to read the current version of the same statute as if the deleted word were still there. *See Polomski, supra* (noting that "slight word changes were in fact made to [L.E.] § 9–503(d)(2)" even though the Revisor's Note indicates the provision was "adopted without substantive change.")

The reasoning employed by the Court of Appeals in its construction of L.E. § 9–503(d)(2), an offset provision in the fire fighter and policemen heart-lung occupational disease statute of the Act, lends support to our statutory interpretation in this case. In *Polomski, supra,* the Court held that a fire fighter's workers' compensation benefits for occupational disease were to be adjusted by his length of service retirement benefits. The offset statute under scrutiny in *Polomski* reads:

> The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the fire fighter . . . .

The fire fighter contended that, just as benefits must be "similar" to be offset under former Art. 101, § 33(d), retirement benefits must be "similar" to workers' compensation benefits to trigger an adjustment under L.E. § 9–503(d)(2). The Court disagreed. Remarking that, "notwithstanding years of revision and recodification … [L.E. § 9–503(d)(2) and its predecessors] have never employed the 'similar benefits' language," it held that it would be unreasonable to read a "similar benefits" requirement into L.E. § 9–503(d)(2):

Unlike Art. 101, § 33(d), § 9–503(d)(2) and its predecessors make no distinction between retirement benefits accruing by reason of age and service versus those accruing as the result of a disability, and no reasonable inference to that effect can be drawn from the section's clear language. *Id.* at 82.

Likewise, the clear language of L.E. § 9–610(a) no longer draws a distinction between retirement or pension benefits that are service-related and those that accrue due to disability. That the "similar benefit" phrase once appeared in the statutory predecessor to L.E. § 9–610(a) does not lead logically to the conclusion that the concept still applies to the statute, absent the language. Indeed, it compels the contrary conclusion: that the Legislature intended by its clear language to eliminate the distinction that once existed in the law.

Our conclusion that the governmental employee offset provision of L.E. § 9–610(a) is not intended by the Legislature to be restricted to benefits similar to workers' compensation benefits is based primarily on "the language chosen by the General Assembly to express its intention." *Frank,* 284 Md. at 658, 399 A.2d 250. We are cognizant, however, that as we "give the words of the statute their ordinary and common meaning with the context in which they are used ... [we must] keep[ ] in mind the overall purpose of the Act ..." *Polomski,* 344 Md. at 75–76, 684 A.2d 1338. As the Court of Appeals has explained:

> While the language of [a] statute is the primary source for determining legislative intent, the plain meaning rule is not absolute. Rather the statute is to be construed reasonably with reference to the purpose, aim, or policies of the Legislature reflected in the statute. Words in the statute must, therefore, be read in a way that advances the legislative policy involved.

*Taxiera,* 320 Md. at 480, 578 A.2d 761 (citations omitted).

In *Polomski,* the Court of Appeals broadly described the objective of the Workers' Compensation Act, since its inception, as follows:

[T]he Act protects employees, employers, and the public alike. To be sure, the Act maintains a no-fault compensation system for employees and their families for work-related injuries where compensation for lost earning capacity is otherwise available. At the same time, however, the Act also recognizes the need to protect employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of 'caring for the helpless human wreckage found [along] the trail of modern industry.' In other words, the Act provides employees suffering from work-related accidental injuries, regardless of fault, with a certain, efficient, and dignified form of compensation. In exchange, employees abandon common law remedies, thereby relieving employers from the vagaries of tort liability.

344 Md. at 76–77, 684 A.2d 1338 (quoting *Liggett & Meyers Tobacco Co. v. Goslin,* 163 Md. 74, 80, 160 A. 804 (1932))(other citations omitted). The Court noted that, in addition to wage-loss protection, the Act "affords employees medical benefits, the opportunity for vocational rehabilitation, and, in the event of death, dependent survivor benefits and allowances for funeral expenses." *Id.* at 77, n. 6, 160 A. 804 (citations omitted).

In *Frank v. Baltimore County, supra,* decided nine years before *Newman,* the Court of Appeals read former Art. 101, § 33 to express the Legislature's intention "to provide only a single recovery for a single injury for government employees covered by both a pension plan and workmen's compensation." *Id.* at 659, 399 A.2d 250. That intention, the Court observed:

[I]s also consistent with the generally recognized policy underlying all wage-loss legislation:

Wage-loss legislation is designed to restore to the worker a portion ... of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss ... Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experi-

encing only one wage loss and, in any logical system, should receive only one wage-loss benefit.

*Id.* (quoting 4 A. Larson, *The Law of Workmen's Compensation* § 97.10, at 18–9 (1979)(footnotes omitted)).[6]

The cases are legion that hold that the legislative purpose of the governmental employee offset provision is to preclude "double dipping" by government workers. *See Frank,* 284 Md. at 663, 399 A.2d 250; *Mazor,* 279 Md. at 363, 369 A.2d 82; *Feissner,* 282 Md. at 421–22, 384 A.2d 742. The purpose of anti"double dipping" legislation is "to minimize the burden on the public treasury that would result from providing duplicate benefits to public employees." *Frank,* 284 Md. at 661, 399 A.2d 250. *See also Tsottles v. Mayor & City Council of Baltimore,* 55 Md.App. 58, 59, 460 A.2d 636 (1983)(former Art. 101, § 33 "attempts to prevent double payment from the public treasury to civil servants for an injury arising out of the employment relationship by providing that government employees covered by both a pension plan and workmen's compensation are entitled to but a single recovery for a single injury"); *Oros,* 56 Md.App. at 694, 468 A.2d 693 (1983); *Nooe v. City of Baltimore,* 28 Md.App. 348, 352, 345 A.2d 134 (1975).

■ In *Newman,* the Court found that the "similar benefit" limitation in the governmental employee offset provision of former Art. 101, § 33(d) was consonant with the anti-"double dipping" purpose of the offset statute, in that it prevented a governmental employer from having to pay benefits twice on account of a single injury suffered by an employee. The case *sub judice* raises the broader related question whether an offset provision that is not restricted to like or similar benefits is inconsistent with its anti-"double dipping" purpose or, more important, with the overall objectives of the Act. We hold that it is not.

---

**6.** The identical language now appears in Larson, 9 *Workers' Compensation Law,* § 97.10 (1997).

The primary and overriding objective of workers' compensation legislation is wage-loss protection. The Court of Appeals explained in *Mazor v. State, Department of Correction:*

> [W]orkmen's compensation is one facet of an overall system of wage-loss protection, ... the underlying principle of the system is to restore to the worker a portion of the wages lost by physical disability, unemployment, or old age. It follows that although two or more causes of wage loss may coincide, the benefits need not cumulate, for the worker experiences but one wage loss.

279 Md. at 363, 369 A.2d 82. Allowing a government employer to offset the sum that it pays to an employee as an age and length of service retirement benefit against its liability to the employee for an unrelated workers' compensation award does not undermine the wage-loss protection objective of the Act.

A government worker who receives workers' compensation as a result of an accidental work-related injury but who elects to retire and receive benefits to which he is entitled on account of age and years of service: 1) experiences wage-loss due to age and years of service, not due to injury; and 2) is afforded protection for that wage-loss in the form of an employer paid retirement benefit. Once such a worker elects retirement, the workers' compensation that he would have received to protect him against what would have been an injury induced wage-loss becomes a dual and duplicate benefit. Limiting the operation of the offset statute to require the governmental employer to continue to pay workers' compensation benefits in that situation does not advance the wage-loss purpose of the Act and runs counter to the fiscal anti-"double-dipping" objective of the offset statute. We note also that the Court's refusal, in *Polomski,* to read "similar benefit" language into the adjustment provision of L.E. § 9–503(d)(2) strongly suggests that the broad legislative objectives of the Act are not undermined or thwarted by allowing offsets and adjustments for government paid length of service benefits against government paid workers' compensation benefits.

In the case *sub judice,* Wills's average weekly wage before retiring after 31 years of employment by Baltimore County

was $492.08. Under former Art. 101, § 33(d) and the holding in *Newman,* after retirement, Wills would receive $629.23 per week from Baltimore County ($329.00 in workers' compensation plus $300.23 in retirement benefits), which is a sum $137.15 greater than the sum she earned while gainfully employed. By eliminating the word "similar" from the governmental employee offset provision of the Act, the Legislature precluded that result. In so doing, it protected the public from having to pay workers' compensation benefits for a civil servant whose wage-loss was already protected by publicly funded benefits of another sort. That result is not inconsistent with the purposes of the offset provision or of the Act generally. Indeed, it is consistent with the legislative intention "to minimize the burden on the public treasury that would result from providing duplicate benefits to public employees." *Frank,* 284 Md. at 661, 399 A.2d 250.

## IV

### *Blevins:* Timing of Benefits

Although appellant Jerry Blevins sustained a work-related injury on January 21, 1994, he did not lose any time from work. He was paid at his full salary of $77,000.00 per year until he took a disability retirement on November 16, 1995, at which time he stopped receiving his salary and started to receive disability benefits equal to 66.6% of that salary, tax-free. Several months later, he applied for workers' compensation benefits, which were awarded and partially back-dated. The lower court ruled that the commission erred in refusing to apply the governmental employee offset provision of L.E. § 9–610(a) to that portion of Blevins's workers' compensation award that was back-dated to the period from the day after his injury to the date of his retirement. Blevins now contends that the circuit court erred because the offset does not apply to workers' compensation benefits that pre-date the retirement benefits by which they are offset. He is wrong.

In *Frank,* Judge Digges, writing for the Court of Appeals, addressed a similar argument. There, a Baltimore County

police officer suffered a work-related injury. At first, he did not lose any time from work and was paid as usual. Six months later, however, he started to lose time from work and decided to take a disability retirement. He retired approximately 8 months after the injury and immediately started to draw disability retirement benefits. At approximately the same time, he petitioned for workers' compensation benefits. One year later, he was awarded workers' compensation of a certain sum per week for a period of time beginning on his retirement date. The commission offset the entire award by the officer's retirement benefit under former Art. 101, § 33(d). The circuit court affirmed the commission's decision. Before the case was decided by this Court, the Court of Appeals issued a writ of certiorari.

Officer Frank argued that the governmental employee offset provision did not apply to his workers' compensation award, in part because he had contributed to the pension plan from which he was receiving disability benefits. He reasoned that until he was repaid in the form of pension benefits a sum equal to his contributions to the plan, Baltimore County was not paying him a benefit and the offset provision was inapplicable. The Court rejected this argument because, *inter alia,* it was premised on the "flaw[ed] ... assumption that the benefits of the two plans are only to be compared for the period in which the two will be simultaneously due." 284 Md. at 661, 399 A.2d 250. The Court explained that the wording of the statute did not comport with the position that Frank was urging upon it:

> This argument ... would also require an addition to the statutory language because there is no provision in the act that places a time limitation upon the contrast that is to be made. The statute simply provides for a comparison of the two benefits and, after making such a comparison in this case, we agree with the commission that there is a complete offset.

*Id.*

Blevins contends that the holding in *Frank* does not apply to this case for two reasons. First, the workers' compensation

benefits being offset in *Frank* were awarded for a time period after the worker's retirement date. Here, the workers' compensation benefits at issue were awarded for a time period preceding, and ending upon, Blevins's retirement. Second, in *Frank*, there was a period of overlap between the workers' compensation benefits and the disability retirement benefits. Here, there is no temporal overlap between the benefits. The workers' compensation benefits apply only to the period from the time of injury to retirement and the disability retirement benefits apply only to the period from the date of retirement forward.

These arguments miss the general principle set forth in *Frank*. The Court of Appeals held that, even if it assumed that a portion of the workers' compensation benefits that the officer received pre-dated his disability benefits, the offset provision would apply. The officer's date of retirement was not central to *Frank*. To the contrary, the Court's holding that the amounts of the two benefits were to be compared irrespective of the timing of the benefits made the date of retirement irrelevant to the application of the offset provision.

▮▮▮ The lack of overlap between benefits that Blevins argues distinguishes this case from *Frank* is not only irrelevant, it is an illusion. The commission awarded Blevins workers' compensation benefits from the date of his injury forward, into the period of retirement during which Blevins receives disability benefits. Thus, there was a substantial period of overlap of benefits. Under *Frank*, the entire workers' compensation award should have been compared to the entire disability retirement award, irrespective of time frame. The commission erroneously divided the workers' compensation award into pre- and post-retirement date benefits and then incorrectly applied the offset provision by comparing the disability retirement benefits to the post-retirement workers' compensation benefits. The lack of overlap that Blevins contends distinguishes this case from *Frank* is thus the product of legal error by the commission.

The general principle that was stated in *Frank* and that is overlooked by Blevins is this: under the language of former Art. 101, § 33(d), the timing of the two benefits being compared has no relevance to the application of the offset. As the Court in *Frank* made plain, if the Legislature had intended for there to be a temporal component to the comparison, it would have included language to that effect in the statute. In the absence of such language, the two benefits are compared without reference to the timing of the award or the period that they cover.

When the Legislature recodified former Art. 101, § 33(d) as L.E. § 9–610(a), it did not revise the statute to "place a time limitation upon the contrast that is to be made." *Frank*, 284 Md. at 661, 399 A.2d 250. Just as the Court in *Frank* refused to read a time-frame for comparison of benefits into the language of the governmental employee offset provision, we will not do so. Indeed, we must conclude from the Legislature's presumed awareness of *Frank* and its demonstrated intention to modify the "similar benefit" rule in revising the Act that it intended for the law pertaining to the timing of benefits to remain unchanged.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**